Kathleen HEMMERLE, also known as
Kathleen Scully, Plaintiff,

v.

K-MART DISCOUNT STORES, a division
of S. S. Kresge Co., Inc., and Richard
A. Green, Defendants.

Civ. A. No. 74-293.

United States District Court,
D. South Carolina,
Columbia Division.

Oct. 23, 1974.

Edmund H. Monteith and M. Carrington Salley, Columbia, S. C., for plaintiff.

George E. Lewis, Columbia, S. C., for defendants.

## ORDER DIRECTING VERDICT IN FAVOR OF DEFENDANTS

CHAPMAN, District Judge.

This action was tried before the Court and a jury on October 3, 1974. The plaintiff seeks damages alleging a cause of action for false arrest and false imprisonment because of an incident which occurred in a K-Mart Discount Store in Columbia, South Carolina on or about June 30, 1972. The facts in the case are outlined herein and were not in dispute. Upon motion by the defendants the Court ordered a direction of verdict in their favor, since the only reasonable inference to be drawn from all of the evidence is that the defendants acted reasonably under the circumstances and any restraint upon the plaintiff's liberty was the action of the police and not the defendants.

On June 26, 1972, the plaintiff was residing at Route 2, Hopkins, South Carolina, with one Ramona Wright and Mrs. Wright's husband. Hopkins is located in Richland County near the city of Columbia. On that date the plaintiff and Mrs. Wright traveled to Bamberg, South Carolina, some 60 miles distance, where they went to see a Dr. Hiers to obtain prescriptions for Biphetamines, a controlled drug under the South Carolina Statutes. Dr. Hiers' office is located in a drug store, which he also operates. He has no nurse or receptionist, and a prescription counter is located in the drug store. Dr. Hiers is in excess of 80 years of age and Mrs. Wright had on one or two previous occasions obtained prescriptions for the same drug from him.

After obtaining the prescriptions from Dr. Hiers, no effort was made to fill them at his drug store, but the plaintiff and Mrs. Wright proceeded back to Columbia, South Carolina, in the automobile of the plaintiff, and went to the K-Mart Store on Jackson Boulevard, Columbia, South Carolina, to have the prescriptions filled. The plaintiff testified that she used this pharmacy because its prices were lower than others in the area. On June 26 the plaintiff had her prescription filled, but Mrs. Wright did not present her prescription on that day, testifying that she did not have any money with her at the time.

Two days later, June 28, 1972, the plaintiff and Mrs. Wright, again traveling in plaintiff's automobile went back to the K-Mart Store where Mrs. Wright presented her prescription to be filled. The defendant Richard A. Green, a pharmacist at the K-Mart prescription counter, told Mrs. Wright that he had only ten of the Biphetamines and if she would return the next day he would fill the balance of the prescription from stock which had been ordered. Mrs. Wright did not return the following day, but did return June 30, 1972 again in the company of the plaintiff, having traveled to the K-Mart Store in plaintiff's automobile. On this occasion the defendant Green advised Mrs. Wright the drugs had just come in and had not been unpacked, so it would be necessary for her to wait a few minutes for him to fill the balance of the prescription.

During this wait the plaintiff was looking around in other departments of the store. Mr. Green went to the rear of the store and called the Narcotics Division of the Columbia City Police Department. A Sergeant Galvin was dispatched to K-Mart for the purpose of investigating the purchase of these drugs.

When the police officers arrived they approached Mrs. Wright, checked her identification and questioned her about the prescription presented to Mr. Green. Mrs. Wright insisted that it was a legitimate prescription which she had obtained from Dr. Hiers. At her request Mr. Green called Dr. Hiers by telephone and explained the situation to him. Green then gave the telephone to Sergeant Galvin who discussed the matter

further with Dr. Hiers. At this time the plaintiff was in the cosmetics department and was pointed out by an employee of K-Mart Stores as being the individual who had come in with Mrs. Wright on Monday and Wednesday of that week and who had filled a similar prescription on Monday. One of the officers, in the company of an employee of K-Mart, approached the plaintiff and asked her to come back to the prescription department. She followed the officer and was taken behind the prescription counter and questioned by the policemen and Sergeant Galvin. Also present were Mr. Green, a K-Mart Security Guard, Mrs. Wright and another K-Mart employee. The plaintiff testified that she felt she was under arrest and that she was not free to leave the area. She asserts this as being false imprisonment alleging that her activities were restricted by the actions of the defendants and the police officers for a period of approximately ten minutes.

When the officers finished their questions to plaintiff, they advised Mrs. Wright that they were taking her to jail for further investigation and left the store. The plaintiff was not taken to jail and following the questions from the officers left the store.

In the telephone conversation between Dr. Hiers and the police officer, Dr. Hiers had been unable to recall the prescriptions or having written them for the plaintiff and Mrs. Wright. After taking Mrs. Wright to jail, Sergeant Galvin sent another policeman to Bamberg with Mrs. Wright's prescription. It was presented to Dr. Hiers who identified it as having been issued by him. Mrs. Wright was thereupon released from custody. Following the release of Mrs. Wright, both she and the plaintiff obtained counsel and filed suit against the present defendants. Both suits were brought in the State Court, but when the plaintiff thereafter moved to the State of Florida and the complaint was amended to show such residence, her case was removed to this court under the Diversity Statute.

Photostatic copies of the prescriptions were introduced into evidence after being identified by the plaintiff, Mrs. Wright and defendant Green. On the prescription the plaintiff gave her address as Bamberg, South Carolina, although she had never lived in the area. The prescription obtained by Mrs. Wright gave her address as Olar, South Carolina, which is near Bamberg, where Mrs. Wright once worked. At the time plaintiff presented her prescription for filling, she was asked her address by the pharmacist and stated Bamberg, which was written on the prescription by the pharmacist, since the original address was blurred or illegible. When Mrs. Wright presented her prescription she was asked for a more definite address and gave Route 2, Box 54-A, Olar, South Carolina. However, her correct address is Route 2, Box 54-A, Hopkins, South Carolina. Each prescription had a large "N" marked on it with what appears to be a Magic Marker type pen. This mark was placed thereon by the pharmacist and indicates a narcotic drug or controlled substance. The prescriptions were for identical drugs except that Biphetamines on the Wright prescription was apparently misspelled with the "B" appearing to be "R".

The automobile of the plaintiff which was used for the trip to Bamberg and the three trips to K-Mart did not have a license plate in the usual place on the rear bumper. It was testified by the plaintiff that the tag had come loose and upon advice of police in Bamberg, she put the plate in the rear window of her vehicle.

When Mr. Green came on duty June 28, 1972, he flipped through the prescriptions for narcotic drugs as was his usual practice. Later in the day when Mrs. Wright presented her prescription, he noticed a similarity between her prescription and plaintiff's, which he had seen on his aforementioned examination. He noticed that both prescriptions were issued on the same day, June 26, 1972, both gave out of town addresses, both were issued by Dr. Hiers, a doctor with

whom he was unfamiliar, and one of the prescriptions misspelled the name of the drug. Becoming suspicious that the prescription of Mrs. Wright might be a forgery, he followed standard procedure in such a case by making an excuse for not filling the entire prescription and requesting her to return at a later date, in the hope that he could verify the prescription or make further investigation before her return. Thereupon he advised her that he did not have a sufficient number of pills to fill the prescription and requested that she return the following day. As Mrs. Wright departed, Mr. Green pressed a button under his counter which alerted a security officer at the door of K-Mart to check the license number of the vehicle in which Mrs. Wright was traveling. Upon checking the security officer reported that there was no license plate on the rear of the vehicle. Thereupon Mr. Green contacted Dr. Thomas D. Wyatt, Director of the Narcotic and Drug Control Division of the State Board of Health. He outlined the facts to Dr. Wyatt, who in turn contacted Dr. Hiers and was advised that neither of these individuals were patients of his and that he did not recall writing the prescriptions. Dr. Wyatt called defendant Green and directed him to summon the police when Mrs. Wright returned for the balance of the prescription.

At the time the police officers were conducting their questioning of Mrs. Wright and the plaintiff in the K-Mart Store behind the prescription counter, plaintiff testified that the store was crowded, she was embarrassed and humiliated because of stares and comments of customers.

It should be noted that the giving of a false address to Dr. Hiers by the plaintiff and Mrs. Wright was a premeditated act, since plaintiff testified that they had discussed this going to Bamberg. Since they felt the doctor might think it was strange for them to come to Bamberg just to get a prescription for these drugs, and since Mrs. Wright had once

lived in Olar, they decided to both give addresses in the Bamberg area. In connection with the false address it is also appropriate to note that this is a violation of the criminal statutes of South Carolina relating to the sale of drugs. (Sec. 32–1453.2, South Carolina Code of Laws, 1962, as amended). The false addresses compounded the situation since Dr. Hiers, who is quite elderly, would probably have recognized the names when first called by Dr. Wyatt, if the parties had been identified as being from Columbia, South Carolina.

In Thomas v. Colonial Stores, 236 S.C. 95, 113 S.E.2d 337 (1960) it is stated:

"In false imprisonment, the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification. If the restraint or imprisonment complained of is under lawful process, the action fails."

The present facts are more analogous to Wingate v. Postal Telegraph & Cable Co., 204 S.C. 520, 30 S.E.2d 307 (1944) which states:

"If respondent was arrested by the police officers on their own volition, neither the messenger boy nor his employer could be held liable. Where a person merely directs the attention of a police officer to what he supposes to be a breach of the peace, or gives to such officer facts indicating such, and the officer, without other direction, arrests the offender on his own responsibility, the person who did nothing more than communicate the facts to the officer is not liable for causing the arrest, even though it is made without a warrant. See annotation in Annotated Cases, 1917 E. at page 404. Where a person has information or knowledge that the law has been violated, he not only has a right, but frequently it is his duty, to communicate such information or facts to the proper officer so as to give such officer the opportunity, if in his judgment it is proper to do so, to take whatever steps may be necessary to apprehend the offender. As said in

Burton v. McNeill, 196 S.C. 250, 13 S.E.2d 10, 11, 133 A.L.R. 603, "Those who honestly seek the enforcement of the law * * * and who are supported by circumstances sufficiently strong to warrant a cautious man in the belief that the party suspected may be guilty of the offense charged, should not be made unduly apprehensive that they will be held answerable in damages.'" 30 S.E.2d at 310.

 This Court together with all pharmacists, law enforcement officers and informed citizens are aware of the drug abuse problem in this country. Strict laws have been adopted relating to the dispensing of drugs, including Biphetamines, and the defendant Green. would be shirking his responsibility as a pharmacist to close his eyes to circumstances which raise a suspicion that a prescription may be a forgery or that the drug laws may be violated through his filling of a prescription. Pharmacists have not only the right, but the duty to report any suspicious circumstances concerning drugs to the proper authorities, which is all that defendant Green did in the present case. He was confronted with a situation in which a prescription was presented to him on June 28, 1972 which was practically identical to one issued to plaintiff and filled two days earlier. Both prescriptions were written by the same doctor on the same date, and a doctor not known to the pharmacist. This doctor lived 60 miles from Columbia in Bamberg and the addresses on the prescriptions were in the Bamberg area and not in the Columbia area. The spelling on one prescription was incorrect and a check of the automobile showed no license tag in the usual place. These facts were sufficient to arouse the suspicion of the druggist and he duly reported this to the proper authorities. From this point on he and his employer K-Mart were operating under the direction and control of the State Board of Health and the Narcotics Division of the Columbia Police Department. The pharmacist was advised by Dr. Wyatt that Dr. Hiers did not write the pre-

scription, and he was also directed by Dr. Wyatt to notify the police when Mrs. Wright returned to pick up the balance of the prescription. He complied with the directions and since the plaintiff had been with Mrs. Wright on June 26 and 28 at defendant's store and had also obtained drugs on a similar prescription, she was necessarily questioned in an effort to determine the origin of Mrs. Wright's prescription.

The actions of the defendants as well as the investigating officers were more than justified by the information furnished to them. Such actions were not only appropriate, but required under the circumstances. The defendant Green and his employer should be praised and not criticized for his actions in this matter. It is a shame that they have been harassed with law suits as groundless as this one.

It is, therefore, ordered that defendants' motion for directed verdict be and the same is hereby granted.

And it is so ordered.