# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-00313-SCT

*JAMES ALLEN WALKER*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:            1/30/2003
TRIAL JUDGE:                 HON. GEORGE B. READY
COURT FROM WHICH APPEALED:   DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      BOBBY TAYLOR VANCE
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: JOHN R. HENRY
DISTRICT ATTORNEY:           JOHN W. CHAMPION
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 08/05/2004
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WALLER, P.J., CARLSON AND DICKINSON, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     James Allen Walker appeals from a jury verdict convicting him of possession of two

precursor chemicals (pseudoephedrine and lithium), knowing that the precursor chemicals

would be used to unlawfully manufacture a controlled substance (methamphetamine).

¶2.     On June 12, 2001, an employee of Sam's Club in Southaven called the Southaven

Police Department, reporting that a white male had bought large amounts of ephedrine.  As

the police arrived, a GMC pickup truck occupied by two white males was leaving the

parking lot.  The driver of the truck matched the description (white male, mid-30s, wearing

a pullover shirt with three large stripes) given by the employee. The police proceeded to follow the truck and then noticed that the truck had no brake lights. They stopped the truck and informed the occupants, James Allen Walker and William Stanley Miller, that they had received a report about someone buying large quantities of ephedrine. The occupants verbally consented to a search of the truck. The police recovered several boxes of ephedrine and several packs of lithium batteries. Walker and Miller were arrested for possession of two or more precursors.

¶3. After a trial, Walker was found guilty and was sentenced to 20 years in the custody of the Mississippi Department of Corrections, with 10 years suspended conditioned on future good behavior. After considering the issues Walker raises on appeal, we affirm the conviction and sentence.

## DISCUSSION

### I. THE CONSTITUTIONALITY OF MISS. CODE ANN. § 41-29-313(1)(a)(ii).

¶4. Walker argues that Miss. Code Ann. § 41-29-313(1)(a)(ii) (Supp. 2003), the statute under which he was convicted and sentenced, is unconstitutionally vague. The statute provides in pertinent part as follows:

> (1)(a) Except as authorized in this section, it is unlawful for any person to knowingly or intentionally:
>
> * * *
>
> (ii) Purchase, possess, transfer or distribute any two (2) or more of the listed precursor chemicals or drugs in any amount, knowing, or under circumstances where one reasonably should know, that the listed precursor chemical or drug

2

will be used to unlawfully manufacture a controlled substance.

* * *

(3)     The terms "listed precursor drug or chemical" means a precursor drug or chemical that, in addition to legitimate uses, may be used in manufacturing a controlled substance in violation of this chapter. . . . The following are "listed precursor drugs or chemicals": . . . (d) Ephedrine; . . . (f) Lithium; . . . .

Walker contends that:

[t]he reasonable person who sees legal and legitimate items for sale with no notice that the brand or name under which they are sold may contain an ingredient [that] is a precursor and that the purchase of two or more legitimate, legal items may subject the purchaser to criminal prosecution does not have notice and such lack of notice denies the American consumer of common household products constitutional due process.

¶5.     "Legislative acts are . . . cloaked with a presumption of constitutionality, and unconstitutionality must appear beyond reasonable doubt." *Mauldin v. Branch*, 866 So. 2d 429, 435 (Miss. 2003) (citing *In re Estate of Smiley*, 530 So. 2d 18, 21-22 (Miss. 1988)). A statute's validity is presumed:

We adhere here to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusions affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of validity of a statute. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.

*Loden v. Miss. Pub. Serv. Comm'n*, 279 So. 2d 636, 640 (Miss. 1973) (citations omitted).

We must presume that the Legislature "intended to comply with the organic law, and the

3

statute should be given a reasonable interpretation which is consistent with that presumed intent and which would permit the upholding of the act." *Mauldin*, 866 So. 2d at 435 (citing *Berry v. Southern Pine Elec. Power Ass'n*, 222 Miss. 260, 76 So. 2d 212, 214 (1954)).

¶6.   "[T]he wording of a statute does not necessarily offend the requirements of due process as long as the language provides a 'sufficient warning as to the proscribed conduct when measured by common understanding and practices . . . .'" *Perkins v. State*, 863 So. 2d 47, 54 (Miss. 2004) (citing *Cassibry v. State*, 404 So. 2d 1360, 1368 (Miss. 1981) (following *Roth v. United States,* 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957))).

¶7.   We find that Walker has failed to overcome the presumption that the statute is constitutional.  Walker's argument that an ordinary person buying a box of decongestant would not know that he or she was committing a crime fails because the statute requires mens rea, i.e., either having known or should have reasonably known that the decongestant would be used in the manufacture of a controlled substance.  *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S. Ct. 1186, 1193, 71 L. Ed. 2d 362 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").  *See also Tobacco Accessories & Novelty Craftsmen Merchants Ass'n v. Treen*, 681 F.2d 378 (5th Cir. 1982); *Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d 1213 (11th Cir. 1982).

¶8.   This claim is without merit.

II.   **WHETHER THE POLICE OFFICER'S ACTS OF FOLLOWING WALKER'S TRUCK AND MAKING**

4

## AN INVESTIGATORY STOP WERE BASED ON REASONABLE SUSPICION.

¶9.     Walker claims that probable cause and/or reasonable suspicion did not exist because Officer Greg Smorowski, the first officer on the scene, began following Walker's truck before Officer Smorowski was able to determine that Walker's appearance matched that of the description given.  Indeed, the record shows:

> . . . Dispatch put out a call that there was a white male subject inside Sam's attempting to purchase a large amount of ephedrine.  So I told dispatch that I was in the area, and I pulled up onto the parking lot trying to locate the subjects or the vehicle.
>
> At that time, they didn't have a vehicle description. [A] blue pickup truck . . . was leaving the parking lot as I was pulling up on the parking lot.  It was occupied by two white males. . . .  I looked down at it, and it didn't have any brake lights on the vehicle. So I pulled in behind it and waited for traffic to clear.
>
> When they got a break in traffic, the vehicle made a left turn out onto Goodman Road, and at that time, I made a left turn out on Goodman Road after the vehicle, and I was able to observe the driver of the vehicle.  The driver of the vehicle, as the call was put out was supposed to be a white male wearing a striped shirt where the stripes ran up and down.

¶10.    Walker is mistaken that probable cause was needed to (1) watch the truck because of the defective brake lights; (2) follow the vehicle after matching Walker's description with that given by the Sam's employee; and (3) make an investigatory stop.  All that is needed for these activities is reasonable suspicion:

> [T]he Fourth Amendment . . . requires that in every situation the officer must make the intrusion into the person's privacy as limited as reasonably possible.  On the other hand, as aptly stated in United States v. West, 460 F.2d 374 (5th Cir. 1972),

5

> "The local policeman . . . is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so."

*Singletary v. State*, 318 So. 2d 873, 876 (Miss. 1975). The constitutional requirements for an investigative stop and detention are less stringent than those for an arrest. An investigative stop of a suspect may be made so long as an officer has "a reasonable suspicion, grounded in specific and articulable facts, that a person he encounters was involved in or is wanted in connection with a felony." *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114 (Miss. 1999)). Put another way, the investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer had a reasonable suspicion, based upon specific and articulable facts which, taken together with rational inferences from those facts, result in the conclusion that criminal behavior has occurred or is imminent. *Terry v. Ohio,* 392 U.S. 1, 19, 88 S. Ct. 1868, 1878-79, 20 L. Ed. 2d 889, 904-05 (1968).

¶11.    We find that Officer Smorowski did have a reasonable suspicion to pick out Walker, to begin to follow him, and to make an investigatory stop. The officer knew that a white male had bought a large quantity of ephedrine. The Sam's employee could not have called the police department until the person checked out because there was no way to determine what the person was purchasing until check-out. Therefore, the officer reasonably opined that the person would be in the parking lot by the time the officer arrived. He saw Walker's truck with two white male passengers. At that point, it was reasonable to suspect that the white male who purchased the ephedrine *could* be one of the occupants of the truck. He

6

noticed that the truck did not have brake lights, so, as the truck had stopped at the entrance to the parking lot in order to make a left-hand turn, the officer pulled in behind it. As the truck pulled out into traffic, the officer was able to see that the driver (Walker) of the truck had on a pullover shirt with three wide stripes, matching the description given by the Sam's employee. The officer began to follow the truck and then made an investigatory stop.

¶12. The United States Supreme Court has stated that, as a general rule, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Floyd*, 749 So. 2d at 115 (citing *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996)). Miss. Code Ann. § 63-7-13(3) (Rev. 1996) provides that "every motor vehicle . . . shall be equipped with at least one rear lamp mounted on the rear, which, when lighted, shall emit a red light plainly visible from a distance of five hundred feet to the rear." Therefore, because Walker's truck violated § 63-7-13(3), and a traffic violation had occurred, stopping the truck was reasonable. This issue is without merit.

### III. WHETHER THE POLICE OFFICERS HAD PROBABLE CAUSE TO EFFECTUATE A SEARCH AND SEIZURE.

¶13. Walker contends that his consent to the search of his truck "was tainted, as a matter of law, by the unlawful detention during which it was elicited," and that his "detention became unreasonable and unduly excessive in scope at the point when the officers shifted the focus of their investigation from the improper equipment to the possibility of locating contraband within the vehicle." He further argues that the police officers could not have seen any contraband in plain view.

¶14. "The Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution contain almost identical language expressing a person's right to be secure from unreasonable searches and seizures." *Floyd*, 749 So. 2d at 114. The prohibition against unreasonable searches and seizures "applies to seizures of the person, including brief investigatory stops such as the stop of a vehicle." *Id.*

¶15. A search is not unreasonable when it is based on probable cause. Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Godbold v. State*, 731 So. 2d 1184, 1189 (Miss. 1999); *Craig v. State*, 739 So. 2d 410, 412 (Miss. Ct. App. 1999).

¶16. Two exceptions to the rule that a search cannot be conducted without probable cause are as follows: When a driver voluntarily consents to a search of his or her vehicle, there is no need for a search warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973); *Luton v. State*, 287 So. 2d 269, 272 (Miss. 1973). "If police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed.2d 334 (1993) (referencing the "plain view" doctrine).

¶17. Sergeant Steve Stewart of the Southaven Police Department testified that he pulled in after Officer Smorowski had stopped Walker's vehicle:

> While [Walker] was speaking with Officer Smorowski on the stop on the Krystal lot, I observed a Wal-Mart bag on the front passenger floorboard which contained several boxes of antihist[amine] tab[let]s or ephedrine and possibly some batters in that pack. It seemed like multiple boxes.

> * * *

> I first explained to [Walker] why I was there because of the call that we had received and asked him did he have any Sudafed in the truck, and he advised that he had purchased several boxes for his store; and then I asked him would he mind if I looked, and he said, "Yeah, sure. Go ahead. That's all I have in there."

¶18. Walker testified that when he got out of his vehicle after Officer Smorowski pulled him over, he left the driver's side door open. This testimony undermines Walker's claim that Sergeant Stewart could not have seen anything inside the vehicle in plain view.

¶19. The Court of Appeals has recently addressed this exact factual situation: After an investigatory stop, the police officer observed a shopping bag containing ephedrine on the back seat. The driver consented to a search of the car. When a driver voluntarily consents to a search of his vehicle, there is no need for a search warrant. *Burchfield v. State*, 2004 WL 1244746 *2 (Miss. Ct. App. 2004) (citing *Luton v. State*, 287 So. 2d 269, 272 (Miss. 1973)). Here, Walker put on absolutely no evidence that he did not consent to the search. He only contends that the stop was unlawful. Because we find that the investigatory stop was based on a reasonable suspicion, we also find that, after the ephedrine was seen in plain view, the officers had probable cause to search the vehicle.

### IV. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING EVIDENCE OF PRIOR CRIMES AND OTHER BAD ACTS.

¶20. Walker argues that receipts found in the vehicle were inadmissible because:

> there was no chain of custody established, no predicate laid, there [was] no personal knowledge by the State and its witnesses as to who, what, when, where and how the receipts came to be in the vehicle[,] no lab results obtained and no physical evidence of the pre-June 12, 2000 [the day of the search and seizure] receipts.

He cites no authority in support of this issue.

¶21. The court ruled that Walker "opened the door" to testimony about the receipts,[1] and that Walker was charged with, among other things, knowingly possessing "precursor drugs or chemicals that, in addition to legitimate uses, may be used in manufacturing a controlled substance . . . ." The receipts which were found in the driver's side door pocket, showed purchases of lithium batteries, a small turner, a pitcher, two boxes of salt, one measuring cup, one spoon, one package of Sudafed, one large gallon container, and two cans of starting fluid. The items were purchased from several different stores. Sergeant Stewart testified as follows:

> The salt is part of a process to cook the dope. [T]he container is used as a gas generator. When you pour professional Drano, when you mix it with salt, it causes a reaction, and it's used to bubble off the dope. It's called the gassing off process, and they use these containers to do that. The gallon jug would be used

---

[1]BY THE DEFENSE: It's your statement that quantity alone makes a legal substance illegal?

BY SGT. STEWART: If it's more than 250 pills or 30 milligrams . . . of Sudafed, whether it's crushed or boxed or two or more precursors . . , it can be illegal if you can establish its purpose for use; and I believe the purpose for use was established by the trail of receipts and other items . . .

10

> for a pill soak . . . . We're seeing they want to use plasticware
> instead of glassware most of the time.

¶22. We find that the receipts were properly admissible because they were for items used in manufacturing methamphetamine and because the defense opened the door to the admission of the receipts. Further, we find that the receipts were within the immediate physical vicinity of Walker inasmuch as they were found in the driver's side door pocket and Walker was driving the vehicle. The receipts were therefore under his immediate control and were properly linked to Walker. *See* **Keys v. State**, 478 So. 2d 266, 267 (Miss. 1985) (Constructive possession may be proved by showing a suspect had dominion and control over the location in which the contraband is found). We find that, even though because the products listed in the receipts were not found in the vehicle, the receipts were admissible because they tended to prove Walker's intent to manufacture methamphetamine. **United States v. Valencia-Amezcua**, 278 F.3d 901, 910 (9th Cir. 2002) (Conviction for production of methamphetamine amply supported by "powerful circumstantial evidence, the receipts for the purchase of household tools used in methamphetamine production, found in Amezcua's possession at the time of the arrest and showing purchases from stores near Amezcua's home."). Finally, we find that no State Crime Lab authentication was needed for unopened boxes of ephedrine which were in unbroken blister packages. There was no evidence that the substance within the ephedrine boxes was anything but ephedrine. This issue is without merit.

## V. JOHNNY COX'S TESTIMONY.

11

¶23. Johnny Cox testified as an expert in the field of methamphetamine investigative procedures. He testified that the items located in Walker's truck and all of the items listed on the receipts located in the truck were consistent with the manufacture and production of methamphetamine. He also testified about clandestine laboratories, the methamphetamine manufacturing process, and the DEA's formula of calculating the amount of finished product/yield produced with the number of pills and/or precursors that were in Walker's possession at the time of the arrest.

¶24. Walker contends that this testimony was inadmissible because, prior to trial, the State stipulated that Walker was not a methamphetamine manufacturer and that it would not "introduce any evidence of manufacture in its case-in-chief." This argument is not well taken. Walker was not charged with the manufacture of methamphetamine; he was charged with the possession of precursors with the intent that the precursors would be used in the manufacture of methamphetamine. This charge clearly does not state that Walker was the person who engaged in the manufacture of methamphetamine. However, it is very relevant to the charge of possession of precursors that someone with expertise testify as to the manufacture of methamphetamine so that the precursors which were found in Walker's possession would be used in the manufacture of methamphetamine.

¶25. This claim is without merit.

### VI. WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO GIVE A JURY INSTRUCTION ON ENTRAPMENT.

¶26. Our standard of review for the grant or denial of jury instructions is:

> [T]he instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case. However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case.

*Howell v. State*, 860 So. 2d 704, 761 (Miss. 2003) (quoting *Thomas v. State*, 818 So. 2d 335, 349 (Miss. 2002) and *Humphrey v. State*, 759 So. 2d 368, 380 (Miss. 2000)).

¶27.    Entrapment is the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense. The defense of entrapment is an affirmative defense and must be proved by the defendant. If the defendant already possessed the criminal intent, and the request or inducement merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense. *Hopson v. State*, 625 So. 2d 395, 399 (Miss. 1993).

¶28.    Walker's convoluted theory of entrapment is that the Sam's employee who called the police:

> . . . was acting as the agent of the Southaven Police Department. Sometimes, however, police agents may "encourage" persons to engage in criminal behavior, by seeking to buy from them or to sell to them narcotics or contraband or by seeking to determine if public employees or officers are corrupt by offering them bribes.

> * * *

> What is even more egregious is that Sam[']s offers for sale for monetary profit the very items that may subject it[s] customers to prosecution when without any notice that "Sam[']s"is watching and surreptitiously calling police to apprehend those that Sam[']s determines to be committing "alleged crimes."

13

Walker is in essence stating that he was entrapped because Sam's sold him an ordinary household product which happened to be a precursor for the manufacture of methamphetamine and because Sam's reported him to the police when he was merely doing what Sam's had induced him to do.

¶29.   The very nature of good citizenship in this country is to report any suspicious behavior to law enforcement.  Pharmacies in particular have an additional responsibility to watch for signs of drug abuse and suspicious behavior.  In **Taylor v. Johnson**, 796 So. 2d 11, 14 (La. Ct. App. 2001), a drugstore customer sued a pharmacist for the infliction of emotional distress.  The pharmacist had called the police to report the customer's suspicious behavior, resulting in the customer's arrest.  Dismissing the claim, a Louisiana appellate court found that the pharmacist's actions were "logical" and "reasonable" under the circumstances.

¶30.   A South Carolina United States District Court has discussed the public policy favoring pharmacists' reporting suspicious behavior:

> This Court together with all pharmacists, law enforcement officers and informed citizens are aware of the drug abuse problem in this country.  Strict laws have been adopted relating to the dispensing of drugs, including Biphetamines, and the defendant Green would be shirking his responsibility as a pharmacist to close his eyes to circumstances which raise a suspicion that a prescription may be a forgery or that the drug laws may be violated through his filling of a prescription. *Pharmacists have not only the right, but the duty to report any suspicious circumstances concerning drugs to the proper authorities*, which is all that defendant Green did in the present case.

14

*Hemmerle v. K-Mart Discount Stores*, 383 F. Supp. 303, 307 (D.S.C. 1974) (emphasis added).

¶31. Walker's contention that Sam's induced him to buy the ephedrine is patently absurd. Sam's is a business and its primary purpose is to make money by selling to consumers. It had the duty to report suspicious behavior. We find that the proposed entrapment jury instruction did not have a proper evidentiary foundation. Walker's claim is without merit.

## VII.   THE WEIGHT OF THE EVIDENCE.

¶32. A motion for new trial goes to the weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, we must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. *Hubbard v. State*, 819 So. 2d 1192, 1196 (Miss. 2001); *Grant v. State,* 762 So. 2d 800 (Miss. Ct. App. 2000). The standard of review in determining whether a jury verdict is against the overwhelming weight of the evidence is well settled. "[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Dudley v. State,* 719 So. 2d 180, 182 (Miss. 1998). On review, the State is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Griffin v. State,* 607 So. 2d 1197, 1201 (Miss. 1992). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Dudley,* 719 So. 2d at 182.

15

The standard of review for denials of motions for directed verdict, judgment notwithstanding the verdict and a request for a peremptory instruction is the same. *Jefferson v. State*, 818 So. 2d 1099, 1110-11 (Miss. 2002). A directed verdict, judgment notwithstanding a verdict and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial. *Id.*

¶33. Accepting the State's evidence as true, and/or giving the State the benefit of all favorable inferences that may reasonably be drawn from the evidence, we find that ample evidence supports the guilty verdict. Through the use of the receipts, the State showed that Walker had bought several everyday household items that could be used for the manufacture of methamphetamine. He bought a few of these items at each of several different stores. At the time of the investigatory stop and search, he was in possession of boxes of ephedrine and several lithium batteries. All of this evidence shows that he was in possession of precursors to the manufacture of methamphetamine, with the intent that these products would be used to manufacture methamphetamine.

¶34. Walker contends that his testimony that he bought these products for resale in the store that he owned was uncontradicted, and therefore the State did not prove each element of the charge beyond a reasonable doubt. The jury is the finder of fact, and it evidently believed the State's witnesses more than Walker's self-serving testimony. Besides, why would a store owner go to retail stores in another city to purchase products for resale when he could buy them wholesale? This issue is without merit.

## CONCLUSION

16

¶35.	For these reasons, we affirm the conviction and sentence imposed upon James Allen

Walker.

¶36.	**CONVICTION OF POSSESSION OF TWO (2) OR MORE PRECURSOR CHEMICALS, AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAYMENT OF A FINE IN THE AMOUNT OF $1,000.00, RESTITUTION IN THE AMOUNT OF $100.00 TO THE SOUTHAVEN POLICE DEPARTMENT, WITH CONDITIONS, AND ALL COSTS, AFFIRMED. APPELLANT SHALL SERVE THE FIRST TEN (10) YEARS WITH THE REMAINING TEN (10) YEARS SUSPENDED PENDING FUTURE GOOD BEHAVIOR.**

**SMITH, C.J., COBB, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**