FAIR, J.,
for the Court:
¶ 1. Spencer Lawrence was convicted in the Jackson County Circuit Court of capital murder for the death of Jermaine Kelly. He was sentenced to life imprisonment ■without the possibility of parole. On appeal, Lawrence raises the following issues: (1) whether the trial court should have suppressed evidence gathered from Lawrence’s cell phone and Lawrence’s statements made to one of the police officers; (2) whether Lawrence’s rifle and photographs of the rifle were more prejudicial than probative; (3) whether Lawrence was denied a fair trial based on comments made in the State’s closing argument; and (4) whether the verdict is contrary to the weight of the evidence. Finding no error, we affirm.
FACTS
¶ 2. On October 4, 2009, Kelly was at his father’s house in Moss Point, Mississippi, with his cousin, Donta Davenport. Kelly was supposed to pick up his father from the hospital the following day. During the early morning hours of October 5, 2009, two armed men entered the home, and Kelly was shot seven times in the chest. Kelly died immediately. Officers arrived around 5:45 a.m. to discover Kelly’s body in a room that had been ransacked. The officers also found a cell phone in the backyard.
¶3. Davenport testified that he fell asleep on the couch and was awakened by two men kicking in the back door. He saw two men enter the home, one with a handgun and the other with an SKS or AK-47 “assault rifle.” Both men demanded money from Davenport and Kelly. Davenport complied, handing the men all of his money. He then ran out of the house as the two men assaulted Kelly. Davenport testified that, as he was running out of the house, he heard several gunshots. Davenport ran towards Magnolia Street and was chased by a dark-colored sports utility vehicle (SUV). He escaped and talked to the police later that day. Davenport stated that the man holding the rifle was taller than the man holding the handgun.
¶ 4. Agent Louie Miller of the Pascagou-la Police Department was called in to assist in the homicide investigation. Agent Miller obtained a search warrant for the cell phone found in the backyard and traced it to Jermaine Sims. Agent Miller also discovered that Sims owned a dark-colored SUV. Lawrence and Myron Johnson became suspects when an inmate from the Perry County jail contacted the FBI regarding a conversation he recently had with Lawrence. During his interview, the inmate provided specific details of the crime, including who was involved and what each person took from the scene. The inmate stated that Lawrence admitted to shooting Kelly with a rifle.
¶ 5. Agent Miller informed the George County Sheriffs Department to be on the lookout for a dark SUV. On November 25, *94 2009, Lawrence was arrested without a warrant in George County. He was driving a dark-colored Jeep Cherokee. At the time of his arrest, Lawrence was out on bond on charges of kidnaping and armed robbery. Lawrence was subsequently held in George County on a contempt-of-court warrant. The police seized Lawrence’s cell phone and found that the phone number was one of the phone numbers listed in Sims’s cell-phone records from the night of the homicide. Through additional search warrants, Agent Miller obtained phone records for Lawrence and Johnson. The records obtained from Lawrence’s phone contained a photo of an AK-47. Further investigation revealed that the photo of the gun was taken in Lawrence’s bedroom. The gun was later brought to the police by Lawrence’s mother.
¶ 6. Agent Miller interviewed Lawrence on three different occasions: on the day of the arrest, on November 30, 2009, and on December 2, 2009. Lawrence was Miran-dized[1] each time he was questioned. On the day of his arrest, Lawrence denied being involved in the crime. He later changed his story to say that he was with Sims and Johnson the night Kelly was shot. However, Lawrence stated that he remained in the car during the incident. His testimony at trial was the same as his interview. He denied any participation in the robbery and the shooting of Kelly.
¶ 7. At trial, the State called Martin Joe, who testified to Lawrence’s involvement in the murder of Kelly. Joe, an inmate incarcerated in George County, had been placed in a cell with Lawrence in January 2010. Joe stated that Lawrence told him that, on the night of Kelly’s murder, he, Sims, and Johnson were going to Moss Point to rob Kelly.
¶ 8. The State also called Johnson, who testified to the following: on the night of the shooting, he rode with Sims and Lawrence from Mobile, Alabama, to Moss Point to buy marijuana. On their way to Moss Point, the men picked up Johnson’s cousin, James Johnson. Johnson testified that Sims and Lawrence went into the house first, and when he entered he saw Lawrence pointing a long gun at Kelly. Johnson also stated that, after he saw the guns, he rushed back to the SUV, and his cousin jumped into the front seat to drive. As they were trying to leave, Lawrence and Sims jumped into the vehicle. From there, the four men went to James Johnson’s house, dropped James off, and then drove back to Mobile. Johnson stated that, at some point during the night, he and Sims both lost their cell phones. Johnson also testified that after he was arrested, he was incarcerated in the same detention center as Lawrence, and during that time, Lawrence admitted to shooting Kelly.
¶ 9. At the close of trial, the jury returned a verdict finding Lawrence guilty of capital murder. Lawrence was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections without the possibility of parole.
DISCUSSION
1. Motion to Suppress

A. Invalid Stop

¶ 10. Lawrence argues for the first time on appeal that the stop was invalid. The trial court denied Lawrence’s motion to suppress, and that motion never challenged the stop of the vehicle, but, rather, the validity of his arrest. “An objection at trial on one or more specific grounds constitutes a waiver of all other *95 grounds.” Spicer v. State, 921 So.2d 292, 305 (¶ 22) (Miss.2006) (citing Doss v. State, 709 So.2d 369, 379 (Miss.1996)). Therefore, Lawrence is proeedurally barred from raising this issue on appeal.
¶ 11. Notwithstanding the procedural bar, Lawrence’s argument is without merit. “Police officers may detain a person for a brief, investigatory stop consistent with the Fourth Amendment when the officers have ‘reasonable suspicion, grounded in specific and articulable facts’ that allows the officers to conclude the suspect is wanted in connection with criminal behavior.” Eaddy v. State, 63 So.3d 1209, 1213 (¶ 14) (Miss.2011) (quoting Walker v. State, 881 So.2d 820, 826 (¶ 10) (Miss.2004)). Grounds for reasonable suspicion to make an investigatory stop generally come from an officer’s observation or an informant’s tip. Id. at (¶ 15). “An informant’s tip may provide reasonable suspicion if accompanied by some indication of reliability,” including an “officer’s independent investigation of the informant’s information.” Id. (citation omitted); see also McClellan v. State, 34 So.3d 548, 552 (¶¶ 9-10) (Miss.2010) (finding a valid investigatory stop where officers made the stop after obtaining “somewhat vague” information from an informant). In determining whether there is reasonable suspicion or probable cause for an investigatory stop, our review is de novo. Eaddy, 63 So.3d at 1212 (¶ 11).
¶ 12. Lawrence first' became a suspect after an inmate from the Perry County jail contacted the FBI. The inmate gave Agent Miller a description of the crime based on his conversation with Lawrence. The inmate was able to specify the amount of money and drugs stolen during the robbery. Agent Miller stated that he and his officers found the inmate’s testimony to be credible and reliable based on its' consistency with the evidence. Based on this information, the officers were looking for a black vehicle that belonged to Sims.
¶ 13. Officer Robert Lambeth of the Moss Point Police Department testified that on November 25, 2009, he received a phone call from an officer in George County about a vehicle matching Sims’s dark SUV. He went to George County and saw that- Lawrence was in possession of Sims’s SUV. After Lawrence was arrested, the vehicle was inventoried, and a search warrant was obtained for the vehicle and Lawrence’s cell-phone records. Whether reasonable suspicion exists is a matter judged from the totality of the circumstances. Alabama v. White, 496 U.S. 325, 328-29, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). We conclude that, based on the totality of the circumstances, the officers had reasonable suspicion to stop Lawrence. Therefore, his argument that the stop was invalid is without merit.

B. Delay of Appearance

¶ 14. Lawrence was arrested on November 25, 2009. He did not have an appearance until five days later. Lawrence argues that the confession obtained during the interim was a result of his delayed hearing, which is cause for reversible error. We disagree.
¶ 15. Uniform Rule of Circuit and County Court Practice 6.03 states that “[ejvery person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance.” Our supreme court has stated, however, that “[a] violation of Rule 6.03 alone will not result in the suppression of evidence or reversible error where the defendant was informed of his rights and made a knowing and voluntary waiver.” Jones v. State, 841 So.2d 115, 132 (¶ 47) (Miss.2003). The record reveals *96 that Lawrence was Mirandized before each interview and was aware of his rights. Therefore, we find this issue to be without merit.
2. Rifle and Photographs
¶ 16. Lawrence argues that the evidence of the rifle and the pictures of the rifle were more prejudicial than probative. The admission of relevant evidence is left largely to the discretion of the trial judge. Ferguson v. State, 95 So.3d 1279, 1281 (¶ 10) (Miss.Ct.App.2012) (citation omitted). Mississippi Rule of Evidence 401 defines “relevant evidence” as “evidence having any tendency to make the existence of fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”
¶ 17. Lawrence points to the fact that the firearm expert was unable to say whether the projectiles and cases from the crime scene were fired from the rifle given to the police by Lawrence’s mother. However, the expert also testified that the cases and shells were of the same class as Lawrence’s rifle. The photograph of the rifle and the actual rifle matched the description of the murder weapon. Further, the evidence showed that the picture of the rifle was taken in Lawrence’s bedroom before the shooting. The rifle went missing after the shooting, and Lawrence’s mother later handed it over to the police. There is no question that the admission of this evidence made it more probable that Lawrence committed the crime. Therefore, we find that the judge was within his discretion to allow the rifle and photographs into evidence.
3. State’s Closing Argument
¶ 18. At the close of the trial, the prosecutor referenced the fact that he made a “deal” with Johnson in order to obtain his testimony. He then stated that the jury should not remedy his “deal” with Johnson by letting “the killer go free.” The defense objected to the prosecutor’s statements, and the prosecutor withdrew his comments and rephrased. There were no other objections.
¶ 19. In Ford v. State, 975 So.2d 859, 868 (¶ 33) (Miss.2008), our supreme court stated that while the statement “guilty people flee” may be improper in a closing argument, the defendant’s objection was sustained, and there was no request for a cautionary instruction. The court held that “where an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error.” Id. (citations omitted). The court, therefore, concluded that because the defendant had not asked the judge to admonish the jury, she was barred from raising the argument on appeal. Id.
¶ 20. In this case, the defense did not state a specific ground for objection at trial, did not pursue the objection to obtain a ruling from the trial court, and did not object after the prosecutor rephrased his statements. Therefore, we find this issue to be barred on appeal.
¶ 21. Notwithstanding the procedural bar, there was no error. Juries are presumed to follow the instructions of the trial court. Grayson v. State, 879 So.2d 1008, 1020 (¶ 32) (Miss.2004) (citation omitted). Here, the jury was properly instructed that closing arguments of counsel are not considered evidence. Therefore, this issue is without merit.
4.Weight of Evidence
¶ 22. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of *97 the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (citation omitted).
¶23. Several witnesses testified to Lawrence’s involvement in the shooting of Kelly. On the day of his arrest, Lawrence was driving the SUV that had been used during the commission of the crime. The evidence showed that Lawrence was in possession of a rifle before the shooting that matched the murder weapon. Viewed in the light most favorable to the verdict, we cannot say that the evidence weighs heavily against the jury’s decision to find Lawrence guilty of capital murder. Therefore, we find this argument without merit.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P. JJ„ ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).