# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00870-COA

**MAURICE JOHNSON A/K/A MAURICE ANTONIO JOHNSON**        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/11/2023 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ZAKIA BUTLER CHAMBERLAIN MAURICE JOHNSON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/04/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1. Maurice Johnson was convicted of two counts of possession of a weapon by a felon and sentenced to two consecutive terms of ten years in the custody of the Department of Corrections. On appeal, he argues that his conviction for the second count of possession of a weapon violates double jeopardy and that evidence found in his vehicle was the result of an unreasonable search and seizure. Johnson's double jeopardy claim fails because Johnson acquired the weapons at different times, and the search and seizure of Johnson and his vehicle were lawful. Therefore, we affirm Johnson's convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2.     In the early morning hours of November 27, 2022, Officer Ryu Warnsley of the Hattiesburg Police Department (HPD) was doing a security check at the Luxury Inn on Highway 49 in Hattiesburg.  The HPD had received numerous complaints about drug sales and prostitution at the Luxury Inn, so officers regularly inquired with the hotel's clerk about any problems or suspicious circumstances.  That night, the clerk told Warnsley that a white SUV had been parked in a handicapped space for about an hour and that there had been significant "foot traffic coming to and from [the] vehicle."  The clerk said that the vehicle's occupants were not guests at the hotel, and she asked Warnsley to investigate and tell the vehicle's occupants to leave the premises.

¶3.     Warnsley approached the vehicle and found Johnson in the driver's seat, a female in the front passenger seat, and a male in the backseat.  Warnsley was familiar with Johnson and knew that he was a felon.  Johnson told Warnsley the vehicle belonged to him.  The vehicle was parked in a handicapped space but did not have a handicapped windshield placard or license plate.  Warnsley asked Johnson to exit the vehicle for "officer safety reasons."  Warnsley then noticed a "glass pipe commonly used to smoke narcotics" in plain view in the driver's door panel.  A second officer observed suspected methamphetamine in plain view in the front passenger seat of the vehicle.  From outside the vehicle, Warnsley could also see a "Bowie knife" "between the driver's seat and the center console."  Johnson was arrested, given *Miranda*[1] warnings, and stated that he was willing to talk.  Johnson told Warnsley that

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

he "just bought" the knife less than one hour earlier for $15 from a man at the Star Motel next door. Warnsley and other officers searched the rest of Johnson's SUV and found a rifle in the rear cargo area underneath clothing. Johnson denied knowledge of the rifle and claimed that his female passenger must have put it there.

¶4. Johnson was indicted for two counts of possession of a weapon by a felon. Count I charged him with possessing "a Gordon 8 bowie knife." Count II charged him with possessing "a New England Firearms Handi Rifle SB2 .270 caliber rifle."

¶5. Prior to trial, Johnson filed pro se motions to dismiss the charges on the grounds of an unreasonable search, seizure, and arrest. Johnson also filed a pro se motion to suppress the evidence seized. The circuit court denied Johnson's motions "without prejudice to [his] right to raise any evidentiary objections at trial."

¶6. A jury trial was held in July 2023. Before testimony began, the parties stipulated and the jury was instructed that Johnson had been convicted of a felony in 1978. Warnsley was the only witness to testify, and his body-camera footage was played for the jury.

¶7. The jury found Johnson guilty of both counts. The court sentenced Johnson to serve consecutive terms of ten years in the custody of the Department of Corrections. Johnson filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶8. On appeal, Johnson argues (1) that his conviction for a second count of possession of a weapon violates double jeopardy and (2) that the evidence recovered from his vehicle was

the result of an unreasonable search and seizure.

## I. Double Jeopardy

¶9. We review double jeopardy claims de novo. *Kelly v. State*, 80 So. 3d 802, 804 (¶8) (Miss. 2012). The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." Similarly, the Mississippi Constitution provides that "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense[.]" Miss. Const. art. 3, § 22. "The double-jeopardy clause affords three protections: (1) protection from a second prosecution for the same offense after acquittal, (2) protection from a second prosecution for the same offense after conviction, and (3) *protection from multiple punishments for the same offense*." *Foreman v. State*, 51 So. 3d 957, 960 (¶8) (Miss. 2011) (quotations marks omitted).

¶10. Mississippi Code Annotated section 97-37-5(1) (Supp. 2021) makes it illegal for a felon "to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm." In *McGlasten v. State*, 328 So. 3d 101 (Miss. 2021), McGlasten was charged with and convicted of four separate violations of section 97-37-5(1) for simultaneously possessing four guns in a small residence. *Id.* at 101 (¶1). He argued "that his simultaneous possession of the four guns constituted only one violation of [the statute]," and therefore "his four separate convictions violated the Fifth Amendment's protection against double jeopardy." *Id.* at 103 (¶10). The Mississippi Supreme Court explained that "[t]he gist" of McGlasten's argument was "that his indictment was multiplicitous." *Id.* at (¶11). "An indictment is multiplicitous if it

4

charges a single offense in more than one count." *Id.* (quoting 41 Am. Jur. 2d *Indictments and Informations* § 196 (2015)). "Multiplicitous charges may violate the Fifth Amendment's prohibition against double jeopardy due to the possibility that the defendant will receive more than one sentence for a single offense." *Id.* (quotation marks omitted).

¶11.   The Court's resolution of McGlasten's argument turned on the proper interpretation of section 97-37-5(1), i.e., whether the simultaneous possession of multiple guns constituted multiple violations of the statute or only one. *See id.* at 104 (¶15).  The Court ultimately agreed with McGlasten's view of the statute, holding "that the simultaneous possession of multiple firearms generally constitutes only one offense under Section 97-37-5(1) *unless there is evidence that the weapons were stored in different places or acquired at different times*." *Id.* at 107 (¶27) (emphasis added) (quotation marks, brackets, and ellipsis omitted). The Court then held that three of McGlasten's four convictions had to be vacated because there was no evidence "that all or some of the four weapons [he] simultaneously possessed were stored in different places or acquired at different times." *Id.* at 108 (¶28).

¶12.   This case is distinguishable.  Johnson's rifle was in the back cargo area of his SUV, while his bowie knife was "between the driver's seat and the center console."  Johnson stated, on video, that he had "just bought" the knife less than one hour earlier.  In contrast, Johnson denied knowledge of the rifle.  Thus, Johnson's own statements provided "evidence that the weapons were . . . acquired at different times." *Id.* at 107 (¶27).  Therefore, under the Supreme Court's holding in *McGlasten*, possession of each weapon constituted a separate

5

offense, and Johnson's conviction of a second count does not violate double jeopardy. *Id.*[2]

## II. Unreasonable Search and Seizure

¶13. Johnson asserts that law enforcement's "investigative methods were overly intrusive and resulted in an illegal seizure and search of Johnson and his vehicle." Johnson argues that, as a result, evidence of the weapons was inadmissible at trial.

¶14. "We apply a mixed standard of review to Fourth Amendment issues." *May v. State*, 222 So. 3d 1074, 1078 (¶6) (Miss. Ct. App. 2016). "The existence of probable cause or reasonable suspicion is reviewed de novo." *Id.* "But the de novo review is limited to the trial court's decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards." *Id.* (quotation marks omitted) (quoting *Cook v. State*, 159 So. 3d 534, 537 (¶6) (Miss. 2015)).

¶15. "The Fourth Amendment of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution guarantee a person's right to be free from unreasonable searches and seizures." *Id.* at (¶7) (brackets omitted) (quoting *Cooper v. State*, 145 So. 3d 1164, 1168 (¶10) (Miss. 2014)). Nonetheless, "an officer may, consistent with the Fourth Amendment, make a brief, investigatory detention without a warrant when the officer has a

---

[2] The State also argues that the simultaneous possession of a firearm and a bowie knife is *never* a single offense under section 97-37-5(1). The State reasons that the statute makes it illegal for a felon to possess three distinct categories of weapons: (1) "any firearm or [(2)] any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or [(3)] any muffler or silencer for any firearm." Miss. Code Ann. § 97-37-5(1). The State argues that "each specified weapon category makes up a separate unit of prosecution," and, thus, the simultaneous possession of weapons from more than one category constitutes multiple offenses. Because we affirm Johnson's convictions based on evidence that he acquired the weapons at issue at different times, we need not address the State's broader argument.

reasonable suspicion that criminal activity is afoot." *Rainer v. State*, 944 So. 2d 115, 118 (¶6) (Miss. Ct. App. 2006) (citing *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968)). "[A]n officer who makes such a stop must be able to point to specific and articulable facts that justify the intrusion." *Id.* (quotation marks omitted) (quoting *Terry*, 392 U.S. at 21). "In determining whether there exists the requisite 'reasonable suspicion, grounded in specific and articulable facts,' the court must consider whether, taking into account the totality of the circumstances, the detaining officers had a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114 (¶17) (Miss. 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

¶16. Warnsley was conducting a security check at the Luxury Inn because there had been numerous complaints of drug sales and prostitution at the hotel. The hotel clerk informed Warnsley that a white SUV had been parked in a handicapped space about an hour, that there had been significant foot traffic to and from the vehicle, and that the vehicle's occupants were not guests at the hotel. When Warnsley approached the vehicle, he saw that it lacked a handicapped placard or plate,[3] and he recognized Johnson as a felon. Collectively, this information was sufficient to give rise to a reasonable suspicion of criminal activity warranting a brief investigation, i.e., a *Terry* stop.

¶17. "During a *Terry* stop, officers are authorized to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *Wrenn v. State*, 281 So. 3d 838, 843 (¶17) (Miss. Ct. App. 2018) (quotation marks

---

[3] Any person convicted of unlawfully parking in a handicapped space "shall be guilty of a misdemeanor." Miss. Code Ann. § 27-19-56(5)(a) (Rev. 2022).

7

omitted) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). For example, to protect the officer's own safety, he may require a vehicle's occupants to exit the vehicle during the brief investigation incident to a *Terry* stop. *Maryland v. Wilson*, 519 U.S. 408, 411-15 (1997). Thus, for his own safety, Warnsley was authorized to direct Johnson, a felon, and the vehicle's other occupants to exit the vehicle during the stop.

¶18. "As a general rule, our state and federal Constitutions prohibit searches without a valid warrant unless an exception applies." *May*, 222 So. 3d at 1078 (¶7) (quoting *Galloway v. State*, 122 So. 3d 614, 699 (¶182) (Miss. 2013)). However, "no warrant is required to seize an object in plain view when viewed by an officer from a place he has the lawful right to be, its incriminating character is readily apparent and the officer has a lawful right of access to the evidence." *Johnson v. State*, 999 So. 2d 360, 364 (¶18) (Miss. 2008) (quoting *McKee v. State*, 878 So. 2d 232, 236 (¶9) (Miss. Ct. App. 2004)). In addition, "[u]nder the automobile exception [to the warrant requirement] police may conduct a warrantless search of an automobile and any containers therein if they have probable cause to believe that it contains contraband or evidence of a crime." *Spencer v. State*, 908 So. 2d 783, 787 (¶11) (Miss. Ct. App. 2005); *see also Roche v. State*, 913 So. 2d 306, 313 (¶22) (Miss. 2005) ("There is an exception to the warrant requirement in the context of vehicle searches. When probable cause justifies the search of vehicle which police have lawfully stopped, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (quotation marks and citation omitted)). Once officers observe illegal narcotics inside a vehicle "in plain view, the officers ha[ve] probable cause to search the vehicle." *Walker v.*

*State*, 881 So. 2d 820, 828 (¶19) (Miss. 2004).

¶19.    Here, during the course and within the scope of a valid *Terry* stop, officers observed suspected methamphetamine and drug paraphernalia in plain view in Johnson's vehicle. Thus, pursuant to the automobile exception, the officers had probable cause to search every part of the vehicle without a warrant. *Id.* Accordingly, Johnson's challenge to the search and seizure of the evidence against him is without merit.

## CONCLUSION

¶20.    There was evidence that the weapons at issue were acquired at different times. Therefore, Johnson's conviction of a second count of possession of a weapon by a felon does not violate double jeopardy. *McGlasten*, 328 So. 3d at 107 (¶27). In addition, during the course of a valid *Terry* stop, officers observed suspected methamphetamine and paraphernalia in plain view inside Johnson's vehicle, which gave them probable cause to search the remainder of the vehicle. Accordingly, the trial court properly denied Johnson's motion to suppress.

¶21.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.  McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**