ROBERTS, J.,
for the Court.
¶ 1. A jury sitting before the Neshoba County Circuit Court found Jamie Lee Anderson guilty of possession of methamphetamine. The circuit court sentenced Anderson to twelve years in the custody of the Mississippi Department of Corrections (MDOC). Following unsuccessful post-trial motions, Anderson appeals and claims that the circuit court erred when it denied his pretrial motion to suppress evidence seized by the law enforcement officers who searched him and found methamphetamine in his possession. We agree that the evi- *758 denee was seized in violation of Anderson’s Fourth Amendment right to be free of unreasonable searches and seizures. Because there was no other evidence that Anderson had methamphetamine in his possession, we reverse the circuit court’s judgment of conviction and render a judgment of acquittal and discharge Anderson.
FACTS AND PROCEDURAL HISTORY
¶2. The relevant facts are not in dispute. Mississippi Bureau of Narcotics Agents Richard Sistrunk and Grant Myers (both in plain clothes) received two separate anonymous tips alerting them to suspicious and possible criminal activity. The complaint was related to the mobile home residence of Thomas Walden in a rural area near the House community in Nesho-ba County. According to the anonymous tips, people with flashlights were in the woods at night, and people walked in the roads at all hours. One late afternoon in July 2006, Agents Sistrunk and Myers, along with Deputy Barry Truett of the Neshoba County Sheriffs Department, responded to the tips and went to Walden’s home to investigate.
¶ 3. Upon their arrival, the officers walked up on the porch. The solid core door was open, and Agents Sistrunk and Myers were able to see clearly through the home’s glass storm door. Agents Sistrunk and Myers saw Daniel Day, who appeared to be asleep on a sofa. Agents Sistrunk and Myers knew that Day had been convicted of a felony, and they saw a pistol on a table near Day. Despite knocking loudly on the door facing, Agents Sistrunk and Myers were not able to wake Day. Consequently, Agents Sistrunk and Myers entered the home and secured Day and the pistol.
¶ 4. As Agent Sistrunk was about to search the house for any other occupants, he noticed Anderson sitting in a chair behind the front door of the home. Day and Anderson were the only occupants of the mobile home. Anderson was escorted onto the front porch where Deputy Truett conducted a pat-down search of him for weapons. Although he did not feel a weapon during the pat-down search, Deputy Truett felt what he knew to be a pill bottle in Anderson’s pants’ pocket. Upon removing the pill bottle and observing the contents through its transparent container, Deputy Truett believed that the bottle contained methamphetamine. Anderson was subsequently handcuffed and arrested for possession of methamphetamine. Day was arrested and charged as a felon in possession of a firearm. Anderson pled not guilty and opted to go to trial.
¶ 5. At the beginning of the trial, the circuit court conducted a suppression hearing at Anderson’s request. Anderson claimed the methamphetamine had been illegally seized and was, therefore, inadmissible. The circuit court disagreed and overruled Anderson’s motion to suppress. Thus, the methamphetamine seized from Anderson’s pants was introduced at trial, and the jury found Anderson guilty of possession of methamphetamine.
STANDARD OF REVIEW
¶ 6. In reviewing a circuit court’s decision to overrule a motion to suppress evidence, we must determine whether the circuit court’s findings, considering the totality of the circumstances, are supported by credible evidence. Moore v. State, 933 So.2d 910, 914(¶ 9) (Miss.2006). We will not disturb the circuit court’s findings of fact on appeal unless the circuit court applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence. Id.
*759 ANALYSIS
¶ 7. Anderson claims the circuit court erred when it overruled his motion to suppress the contents of the pill bottle found during Deputy Truett’s pat-down search. “The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that ‘searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.’ ” United States v. Ross, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (quoting Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). One exception that allows an officer to seize objects without a warrant occurs “if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object.” Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (referencing the “plain-view” doctrine). The burden is on the State to show that the warrantless search comes within one of the exceptions. Jackson v. State, 418 So.2d 827, 829 (Miss.1982).
¶ 8. In the case at bar, Anderson’s argument pivots on the correct interpretation of the “plain-feel” doctrine — the counterpart of the “plain-view” doctrine as described in Dickerson. The United States Supreme Court has explained that the “plain-view” doctrine and the “plain-feel” doctrine are indistinguishable. Dickerson, 508 U.S. at 375, 113 S.Ct. 2130. The Supreme Court has explained the exception as follows:
If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that were in the plain-view context.
Id. at 375-76, 113 S.Ct. 2130.
¶ 9. This Court has acknowledged this exception to a warrantless seizure and stated, in reference to the level of suspicion required to search, that since the “Dickerson ‘plain[-]feel’ exception for the discovery of contraband during a pat-down [search] for weapons is the tactile equivalent of the ‘plain[-]view’ doctrine, it requires probable cause.” Edwards v. State, 795 So.2d 554, 562(¶ 30) (Miss.Ct.App.2001) (citing Dickerson, 508 U.S. at 375, 113 S.Ct. 2130). In other words, while the “plain-view” doctrine forgives the lack of a warrant; it does not dispense with the requirement of probable cause. Arizona v. Hicks, 480 U.S. 321, 326-37, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). Thus, the required suspicion necessary to search for contraband is probable cause, which “exists where the facts and circumstances within the arresting officer’s knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.” Walker v. State, 881 So.2d 820, 827(¶ 15) (Miss.2004).
¶ 10. In the case presently before us, there was sufficient probable cause to arrest Day, a known convicted felon who was in constructive possession of a firearm. However, Day is not the subject of this case. It is beyond dispute that the officers had no warrant nor probable cause to arrest Anderson at the time he was transferred from the inside of the house onto the porch. However, having just plainly observed a handgun illegally in the *760 presence of a known convicted felon, it is apparent that the officers had the reasonable suspicion necessary to conduct a pat-down search for weapons on all individuals present to ensure their own safety and to secure the scene. Terry v. Ohio, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Safety of the officer who believes an individual may be armed is the primary purpose of a pat-down search for weapons. Therefore, “[i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is not longer valid under Terry and its fruits will be suppressed.” Dickerson, 508 U.S. at 373, 113 S.Ct. 2130.
¶ 11. It is clear that Deputy Truett was warranted in performing a protective pat-down search of Anderson at the scene, but instead of a weapon, Deputy Truett discovered a pill bottle. The issue that follows then is whether Deputy Truett had probable cause to believe that what he felt in Anderson’s pants at the time of the pat-down search actually contained contraband. During the suppression hearing, in response to the prosecutor’s questions, Deputy Truett testified on direct examination as follows:
Q. What did you do to Mr. Anderson when he arrived on the porch?
A. He came out on the porch at that time. I patted him down.
Q. Why? I’m sorry to interrupt. Why did you pat him down?
A. To make sure he didn’t have no [sic] weapons for my safety. There was already one weapon involved there. Just for safety purposes.
Q. Did you know how many other people were in the house?
A. I had no idea.
Q. Okay. And what happened as you patted him down?
A. As I patted him down, I felt what I knew was a pill bottle in his pocket. I finished patting him down and retrieved the pill bottle out of his pocket.
Q. How did you know it was a pill bottle?
A. I’ve felt a gazillion pill bottles.
Q. And so you pulled the pill bottle out at that point?
A. Yes, sir.
Q. As Mr. Anderson was brought onto the porch, was he under arrest?
A. Not at that time, not as far as I Imew.
Q. Once you pulled the pill bottle out, what did you find?
A. I pulled the pill bottle out and I saw that it was some contraband in the pill bottle. Just — from looking through the pill bottle. At that time I handed it to Deputy Myers.
Q. Contraband you believed to be drugs?
A. Yes.
Q. And you handed the contents to Deputy Myers. Is that correct?
A. Right. I didn’t open it and take nothing [sic] out. I just handed the whole bottle to Deputy Myers.
Q. And did you place Mr. Anderson under arrest at that point?
A. At that time I handcuffed him and stayed there on the porch with him.
(Emphasis added). Deputy Truett never testified that he believed he felt something that was some sort of potential weapon. Instead, Deputy Truett testified that he knew he felt a pill bottle because he had “felt a gazillion pill bottles.” He assumed the pill bottle contained contraband. There is no testimony in the record that pill bottles found in pants’ pockets normally contain illegal contraband. In a previous case, this Court stated that probable *761 cause for a search was required when an officer believed the object in question contained contraband. McFarlin v. State, 883 So.2d 594, 598(¶ 12) (Miss.Ct.App.2004). In McFarlin, this Court found that an officer lacked the requisite probable cause to assume that the small “knot[-]like nudge” in the defendant’s pants’ pocket was contraband and reversed the lower court’s decision denying the motion to suppress that evidence. Id. at 599(¶ 14). Notwithstanding that decision, the trial court in the case at bar found that there was probable cause for retrieving the pill bottle from Anderson’s pocket, determined that Deputy Truett had not exceeded the bounds of the “plain-feel” doctrine, and ruled that the evidence seized from that pat-down search was admissible against Anderson at trial.
¶12. However, while it is true that a Terry pat-down search allows for the confiscation of contraband that is immediately apparent to an experienced officer conducting the pat-down, the Mississippi Supreme Court has adopted the policy that “[i]n order for a search to fit within the perimeters of the plain[~]view doctrine, the contraband must itself be in plain view.” Ferrell v. State, 649 So.2d 831, 833 (Miss.1995).
¶ 13. In the case at bar, the record shows that the methamphetamine found on Anderson’s person was not immediately apparent as contraband to Deputy Truett during the pat-down; instead, it was apparent to the touch only that it was a pill bottle. The drugs forming the basis of Anderson’s arrest were actually found inside the pill bottle Deputy Truett retrieved from Anderson’s pants. Not until the pill bottle was removed from Anderson’s pants and held up for viewing were the contents recognized by Deputy Truett as potential contraband. At this time, Anderson was placed under arrest for possession of illegal drugs. Similarly, in Ferrell, the seized drugs were only found after the officers removed a common matchbox that had been covering the drugs underneath it. Id. at 834. In that case, the Mississippi Supreme Court found that because the drugs themselves were not in plain view, the contraband did not meet the plain-view exception to a warrantless search and, therefore, the seized items were not admissible at trial. Id.
¶ 14. Just as Deputy Truett only formed the requisite probable cause to arrest Anderson when he actually pulled the pill bottle from Anderson’s pants’ pocket and peered into the container, the officer in Ferrell viewed the matchbox and purposefully moved it “in search of contraband.” Id. In the same way that the officer in Ferrell kept searching for drugs, Deputy Truett was not satisfied that the pill bottle was actually a “common object in the every day [sic] world.” Id. However, we find, just as the Mississippi Supreme Court found in Ferrell, that “[t]he mere presence of a [pill bottle in a person’s pocket] cannot be termed an incriminating object in plain view.” Id. Accordingly, the seizure of the contraband from a pill bottle in Anderson’s pocket fits neither the “plain-view” nor the “plain-feel” exceptions to the warrant requirement.
¶ 15. The dissent would find that, pursuant to the totality of the circumstances, Deputy Truett had probable cause to believe the pill bottle contained contraband. The dissent’s reasoning is partially based on the concept that Deputy Truett knew “that he was in a house where narcotics were frequently sold.” However, there was no evidence presented that Deputy Truett knew that narcotics were frequently sold at the location at issue. Anonymous sources reported suspicious activity involving people in nearby woods and on nearby roads. While it is among the *762 realm of possibilities that the activities described as suspicious involved the sale of narcotics, one may only arrive at that conclusion through speculation and conjecture. There was no evidence presented that narcotics were sold out of Walden’s trailer, and there was no evidence that Deputy Truett knew that narcotics were sold out of Walden’s trailer. Additionally, the dissent states its position that it “cannot find that during a pat-down search a law enforcement officer is required to ignore an object that he or she has probable cause, through his or her experience, to believe contains narcotics.” Once again, the dissent assumes facts that are not in evidence. There was no evidence that, through his experience, Deputy Truett had probable cause to suspect that a pill bottle contained narcotics. Deputy Truett merely testified that he had “felt a gazillion pill bottles.” He never testified that those “gazillion” pill bottles generally contained contraband. He never testified that even one of those “gazillion pill bottles” contained contraband. That is, Deputy Truett never testified that he had ever found contraband inside a pill bottle. Furthermore, the record shows that no illegal narcotics were found in or around the trailer, nor were any illegal narcotics found in the possession of any other occupant of that trailer.
¶ 16. Otherwise, the dissent’s reasoning is based on its interpretation of Ferrell The dissent would find that Ferrell is distinguishable because, in FerreU, the matchbox that contained contraband, unlike the pill bottle in the case presently before us, “was not clear, so once in plain view, its contents were not known without further investigation for which there was no warrant.” With respect, Ferrell is indistinguishable. As in Ferrell the container itself was not contraband. It is not illegal to be in possession of a pill bottle. Just as the law enforcement officer in Ferrell could not ascertain the contents of the matchbox by sight, Deputy Truett could not ascertain the contents of the pill bottle by touch. It was only through the speculative subsequent investigation by reaching inside Anderson’s pocket, removing the pill bottle, and visually inspecting its contents that Deputy Truett was able to determine that the pill bottle may have contained narcotics. As previously mentioned, a pill bottle, in and of itself, is not contraband. It is not illegal to have a pill bottle, and there was no evidence presented that pill bottles typically contain contraband.
¶17. Accordingly, we reverse the circuit court’s decision to admit the evidence seized incident to Deputy Truett’s pat-down search. Because the evidence against Anderson is insufficient to sustain a conviction without admission of the illegally obtained methamphetamine, we are required to render a judgment of acquittal and discharge Anderson. Roebuck v. State, 915 So.2d 1132, 1141(¶ 28) (Miss.Ct. App.2005).
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY IS REVERSED, A JUDGMENT OF ACQUITTAL IS RENDERED, AND THE APPELLANT IS DISCHARGED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHO-BA COUNTY.
KING, C.J., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR. LEE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J., AND CARLTON, J.