# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00681-COA

| | |
|---|---|
| DAVID LEE MAY A/K/A DAVID L. MAY A/K/A DAVID MAY | APPELLANT |

v.

| | |
|---|---|
| STATE OF MISSISSIPPI | APPELLEE |

DATE OF JUDGMENT: 12/11/2013
TRIAL JUDGE: HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES
ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT JOSEPH SCOTT HEMLEBEN
DISTRICT ATTORNEY: JOEL SMITH
NATURE OF THE CASE: CRIMINAL - FELONY
TRIAL COURT DISPOSITION: CONVICTED OF POSSESSION OF ONE-TENTH BUT LESS THAN TWO GRAMS OF COCAINE AND SENTENCED AS A HABITUAL OFFENDER TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION
DISPOSITION: REVERSED AND RENDERED – 12/13/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**IRVING, P.J., FOR THE COURT:**

¶1.     David Lee May was convicted of possession of one-tenth but less than two grams of

cocaine and sentenced as a habitual offender to life without parole.  On appeal, May argues

he was subject to an illegal search and seizure under the Fourth Amendment. We agree. The State failed to prove that May consented to the search that resulted in the discovery of the cocaine or that the police had probable cause to conduct the search. Therefore, we find that May's conviction and sentence must be reversed and rendered.

FACTS

¶2. Around midnight on November 3, 2010, Biloxi Police Department Officer Doug DeGeorge saw a vehicle veer over the fog line and into the median on Interstate 10. May was a passenger in the vehicle. Officer DeGeorge conducted a traffic stop for careless driving. The driver could not produce a driver's license, so Officer DeGeorge asked him to exit the vehicle. In frisking the driver for weapons, he felt "an unusually large bulge" in the driver's pants. The driver admitted it was drugs. The driver was placed under arrest, and Officer DeGeorge called for backup.

¶3. Officer DeGeorge asked May if he had a driver's license. May had a Mississippi identification card, but his license was suspended. Because the driver had been arrested and May's license was suspended, Officer DeGeorge began the process to have the vehicle towed. Officer DeGeorge asked May to exit the vehicle so it could be inventoried. May was directed to sit on the ground next to the front driver's side tire of Officer DeGeorge's patrol car.

¶4. As May sat on the ground, Officer DeGeorge noticed that he was acting "extremely nervous" and was "[e]xtremely fidgety." Officer DeGeorge observed that May held onto his right shoe and looked down at it if anyone talked to him or he thought anyone was looking

2

at him. Officer DeGeorge asked May if he had anything illegal in his possession. May said no. According to Officer DeGeorge, he then asked May if he would mind removing his shoes. Officer DeGeorge testified that May said he did not mind and took off his shoes. A Zippo lighter fell out of one of his shoes. Officer DeGeorge picked up the lighter to examine it. He testified: "[W]ith a Zippo, you can actually pull the center out to refill it. And so I did so. And a plastic bag containing marijuana, a small amount of marijuana[,] and a small amount of crack cocaine fell out of the center of that." May was arrested. At the police station, he gave a voluntary statement, admitting that the cocaine and marijuana were his.

¶5.    May was indicted in the Harrison County Circuit Court for possession of one-tenth but less than two grams of cocaine under Mississippi Code Annotated section 41-29-139(c)(1)(B) (Supp. 2016). He proceeded to trial and was allowed to represent himself with the assistance of standby counsel. Prior to trial, May filed a pro se motion to suppress. It stated: "I am request[ing] . . . [Investigator] David Elliott . . . of the Biloxi Police Department to suppress all evidence on case num. 10-025337[,] . . . possession of a controlled substance to wit crack[] cocaine/cell phone[]s . . . [—] the items . . . that w[ere] tak[e]n the [night] of Nov. 3[,] 2010." After conducting a hearing, the circuit court denied May's motion to suppress. The jury found May guilty as charged. He was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015) to life in the custody of the Mississippi Department of Corrections. May appeals, arguing his conviction and sentence should be reversed because the search of the lighter violated the Fourth Amendment.

3

STANDARD OF REVIEW

¶6.     We apply a mixed standard of review to Fourth Amendment issues.  *Cook v. State*, 159 So. 3d 534, 537 (¶6) (Miss. 2015).  The existence of probable cause or reasonable suspicion is reviewed de novo.  *Id.*  "But the de novo review is limited to the trial court's 'decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards.'"  *Id.* (quoting *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006)).

DISCUSSION

¶7.     May raises one issue on appeal:  whether the search of the lighter that fell from his shoe violated the Fourth Amendment.  "The Fourth Amendment of the U[nited] S[tates] Constitution and Article 3, Section 23 of the Mississippi Constitution guarantee a person's right to be free from unreasonable searches and seizures." *Cooper v. State*, 145 So. 3d 1164, 1168 (¶10) (Miss. 2014).  "As a general rule, our state and federal Constitutions prohibit searches without a valid warrant unless an exception applies." *Galloway v. State*, 122 So. 3d 614, 669 (¶182) (Miss. 2013).  The State bears the burden to show that a warrantless search falls under one of the permissible exceptions.  *Id.*  If no exception is found, the evidence seized as a result of the search "should be suppressed as fruit of the poisonous tree." *State v. Woods*, 866 So. 2d 422, 427 (¶16) (Miss. 2003).  "A search is not unreasonable when it is based on probable cause." *Walker v. State*, 881 So. 2d 820, 827 (¶15) (Miss. 2004).

¶8.     One exception to the warrant requirement is consent.  *Galloway*, 122 So. 3d at 669 (¶182).  Also excepted from the warrant requirement are items within a police officer's plain view or plain feel. *Ferrell v. State*, 649 So. 2d 831, 833-34 (Miss. 1995) (plain view); *Gales*

4

*v. State*, 153 So. 3d 632, 639 (¶17) (Miss. 2014) (plain feel). The State asserts May consented to the search that resulted in his conviction, and, even if he did not, May's behavior created probable cause for the search, rendering his consent unnecessary. The State further argues that May has waived his arguments regarding these issues, as they were not specifically raised in his motion to suppress.

    *1.    Consent*

¶9.    To provide an exception to the warrant requirement, a person's consent to search must be knowing and voluntary. *Moore v. State*, 933 So. 2d 910, 916 (¶19) (Miss. 2006). For consent to be given knowingly, "the person searched must be aware he has the legal right to refuse." *Id.* Voluntariness is determined from the totality of the circumstances. *Graves v. State*, 708 So. 2d 858, 863 (¶24) (Miss. 1997). Factors to consider are

> whether the circumstances were coercive, occurred while in the custody of law enforcement or occurred in the course of a station house investigation. The court must also look to the individual's maturity, impressionability, experience and education. Further, the court should consider whether the person was excited, under the influence of drugs or alcohol, or mentally incompetent. If the consent occurred while the defendant was being generally cooperative, the consent is more likely to be voluntary; however, if the defendant agreed and then changed his mind, the consent should be suspect.

*Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-28 (1973)). "[W]here consent is given, the State is not required to demonstrate knowledge; rather, 'the burden is on the defendant to show impaired consent or some diminished capacity.'" *Moore*, 933 So. 2d at 916 (¶20) (quoting *Jones v. State*, 607 So. 2d 23, 29 (Miss. 1991)).

¶10.    May argues his consent was involuntary under the circumstances—he was afraid because he had just seen his companion arrested, and he was sitting on the side of the

5

interstate with no way to leave. For these same reasons, May argues that he was subjected to a custodial interrogation, as he was in a custodial situation when Officer DeGeorge asked him to remove his shoe, and he was not read his rights under *Miranda v. Arizona*, 384 U.S. 1121, 1125 (1966), rendering the questioning illegal. However, according to Officer DeGeorge's testimony, May was not under arrest or being detained for any reason when he was asked to remove his shoe. Rather, he was sitting on the ground because his driver's license was suspended and he could not lawfully drive the vehicle in which he had been riding. As Officer DeGeorge testified, "Because we arrested the driver . . . [and] Mr. May . . . [had] a suspended driver's license, . . . he wasn't able to leave at that point." According to May's own statements, he was allowed to use his cell phone to make calls to look for a ride as he sat on the ground. The record shows that Officer DeGeorge did not appear concerned with May at this point. Officer DeGeorge testified he did not recall whether May had his phone or whether he was making calls, as Officer DeGeorge was "dealing with" the driver, who was under arrest, and "[the driver's] narcotics," and he was making phone calls, "notifying the investigators and the supervisors and such."

¶11. As May points out on appeal, practically speaking, it may have been difficult for him to leave the scene, as it was the middle of the night and the traffic stop occurred on the interstate. But there was no testimony to this effect. Nor was there any testimony that Officer DeGeorge used coercive tactics to detain May or make May remove his shoe. May bore the burden to prove his consent was involuntary. He has provided no such proof. Rather, the evidence showed May was being generally cooperative and was allowed to sit

6

with minimal supervision to use his phone. Based on the facts presented, we find May voluntarily consented to the removal of his shoe.

¶12. We must next examine whether May's voluntary consent to remove his shoe extended to the search of the lighter that fell from his shoe. The State argues, and the dissent agrees, that May's consent and voluntary removal of his shoe imputed consent to search all items contained in May's shoe. The State and dissent cite *Gales* in support of their assertion.

¶13. In *Gales*, 153 So. 3d at 636 (¶2), two individuals robbed a convenience store at gunpoint and then fled. A police officer saw a man, later identified as Brandon Gales, who met the description of one of the suspects, running down a street near the store. *Id.* at (¶4). Gales tried to make it look as if he was walking when he saw the officer. *Id.* The officer approached him. *Id.* Because he had reason to suspect that Gales possessed a weapon, the officer frisked Gales for safety reasons. *Id.* at 640 (¶19). The officer felt an unknown bulge in Gales's back pocket. *Id.* at 636 (¶4). The officer asked Gales what was in his pocket. *Id.* at (¶5). Gales voluntarily removed wads of cash. *Id.* at 642 (¶27). On appeal, Gales argued that the officer exceeded the scope of *Terry v. Ohio*, 392 U.S. 1 (1968), by asking him to remove an item from his pocket that the officer knew was not a weapon. *Id.* at 639 (¶17). However, the Mississippi Supreme Court noted that "since *Terry*, the U.S. Supreme Court has held repeatedly that mere police questioning does not constitute a seizure." *Id.* at (¶18) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). The supreme court further found that "once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost." *Id.* at 642 (¶30) (quoting *Illinois v. Andreas*, 463 U.S. 765, 771

(1983)). Thus, "[b]ecause Gales voluntarily showed [the officer] the money, Gales no longer had a 'reasonable expectation of privacy' as to the money under the Fourth Amendment," and the seizure was legal. *Id.* at 639 (¶17).

¶14. This case is distinguishable from *Gales*. When Gales voluntarily removed the cash from his pocket, it was immediately viewable as incriminating because the officer was looking for an armed-robbery suspect matching Gales's description who had stolen cash. And Gales voluntarily showed the officer the cash, removing any reasonable expectation of privacy. Here, however, when May voluntarily removed his shoe, only the lighter was revealed. There was no testimony that the lighter was inherently incriminating or illegal, that the lighter was a weapon or could contain a weapon, or that Officer DeGeorge was concerned for his safety because of the lighter. Thus, unless the scope of May's consent to remove his shoes extended to a search of the interior of the lighter, the search of the lighter was illegal.

¶15. The scope of consent under the Fourth Amendment is examined for "objective reasonableness." *O'Donnell v. State*, 173 So. 3d 907, 914 (¶13) (Miss. Ct. App. 2015). We must ask ourselves: "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). We cannot find that a typical reasonable person would have understood a request to remove a person's shoes as a request to search the contents of any object contained in the shoes. As applied to the facts here, we cannot find that by consenting to remove his shoes, May would have understood that he was consenting to Officer DeGeorge taking apart and searching the lighter that fell from his shoe. Rather, we find the scope of

8

May's consent only extended to the contents of the shoe that were plainly viewable as incriminating or dangerous. Because Officer DeGeorge had no basis to search the lighter and May had not consented to the search of the lighter, May retained a reasonable expectation of privacy in its contents. Without May's consent, the State was required to prove probable cause or another exception to the warrant requirement for the contents of the lighter to be admissible under the Fourth Amendment.

## 2. *Probable Cause*

¶16.    May asserts that Officer DeGeorge's search of the lighter was not reasonably related to the scope of the initial stop nor was probable cause to search the lighter developed during the stop. *See Terry*, 392 U.S. at 20. A search is reasonable under *Terry* when: (1) "the officer's action was justified at its inception," and (2) "it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* Under the first factor, May concedes the careless-driving traffic stop was justified. He also concedes that Officer DeGeorge had the right to conduct a pat-down search for weapons. But he argues that under the second factor, the scope of the search went beyond that allowed by *Terry*, and no probable cause was created during the stop for the warrantless search.

¶17.    We agree that the scope of the search was not reasonably related to the circumstances warranting the interference—the traffic stop. At the time May was asked to remove his shoe, the traffic stop had been completed, and the driver was under arrest. Officers were making arrangements for the vehicle to be inventoried and towed. Therefore, our analysis is limited to whether Officer DeGeorge had probable cause to determine that May was involved in

9

illegal activity.

¶18. Probable cause for a warrantless search "exists where the facts and circumstances within the arresting officer's knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Walker*, 881 So. 2d at 827 (¶15). "A collection of actions which, individually, are subject to innocent explanation may be sufficient to create reasonable suspicion under the totality of the circumstances." *Anderson v. State*, 864 So. 2d 948, 951 (¶13) (Miss. Ct. App. 2003) (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). "However, mere hunches or 'looking suspicious' is not sufficient to establish reasonable suspicion." *Id.* (citing *Brown v. Texas*, 443 U.S. 47, 52 (1979)).

¶19. As the supreme court has explained:

> [Probable cause] is not what some officer thought[;] it is not some conduct that was simply unusual, not some conduct which simply roused the suspicion that illegal activity could be afoot when there was at the same time just as likely a possibility that nothing at all illegal was transpiring. Rather, it must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found.

*Rooks v. State*, 529 So. 2d 546, 555 (Miss. 1988).

¶20. Officer DeGeorge testified at the suppression hearing as follows regarding his observations of May's behavior:

> Q.  And what, if anything, did you observe about Mr. May as he was sitting there in front of your vehicle?

> A.  Mr. May was extremely nervous. Extremely fidgety. He continued to keep holding on to his right shoe, kept looking down at it anytime anybody was talking to him or if he thought somebody was looking at him. I made note of that.

Q.  And what did his demeanor tell you from your experience as a police officer?

A.  Usually when people start looking at things or putting their hand in their pockets or a certain pocket, they are trying to conceal something or hide something.

Q.  And what did you do then?

A.  I asked Mr. May if he had anything illegal on him.  He told me no.  I asked him if he would mind taking his shoes off.  He said, no.  He took his shoes off and a Zippo lighter fell out.

¶21.  At trial, Officer DeGeorge testified as follows:

Q.  What was [May]'s demeanor as he was removed from the vehicle and sitting on the ground in front of your patrol vehicle?

A.  . . . I noticed that he continued to stare at his right shoe.  He started reaching and grabbing for it as if he was trying to hide something. Anytime somebody would look at it, he would hold it.  If somebody wasn't looking at him, he would hold it and kind of look at it.  It kind of brought my attention, obviously, to his right shoe.

Q.  And based on your training and experience, what did . . . his actions suggest to you?

A.  Normally if people are—if they will stick their hand in their pocket, say, their right pocket, but their other hand is not in a pocket, they are usually trying to conceal something in the pocket.  Especially if they look down at their hand.  Most of the time, if something is illegal, such as narcotics or weapons, it's almost as if they're touching it that it doesn't exist and you can't see it.

¶22.  We cannot find probable cause existed for a search based on Officer DeGeorge's testimony. Officer DeGeorge merely testified that he became suspicious that May could have something illegal in his shoe because May acted nervous and looked at and held onto his right shoe as he sat on the ground.  But to establish probable cause, an officer must have

11

"information reasonably leading [the] officer to believe that then and there contraband or evidence material to a criminal investigation would be found." *Rooks*, 529 So. 2d at 555. Officer DeGeorge guessed that May could be in possession of something illegal. But this alone is insufficient to establish probable cause. As stated, "mere hunches or 'looking suspicious' is not sufficient to establish reasonable suspicion." *Anderson*, 864 So. 2d at 951 (¶13).

¶23. We find the facts here analogous to the following cases, in which no probable cause was found under the plain-view or plain-feel doctrine for containers that typically hold innocuous materials. In *Anderson*, 864 So. 2d at 949 (¶2), a police officer conducted a traffic stop at approximately 11:30 p.m. The defendant, Carl Anderson, was asked to exit the vehicle. *Id*. at (¶3). Anderson acted nervous, and the officer could see a plastic bag sticking out of Anderson's pants. *Id*. The officer testified he could not see the contents of the bag, nor did he believe the bag itself to be dangerous. *Id.* at 950 (¶9). But the officer thought the bag looked "out of place." *Id.* at 951 (¶12). He pulled Anderson's pants away from his body and could see the plastic bag contained what appeared to be cocaine. *Id.* at 949-50 (¶3). In holding the search was illegal, we found that "[t]hough crack cocaine may quite often be carried in plastic bags, and though having a plastic bag inside one's pants may be unusual, neither consideration creates probable cause to believe that there was cocaine." *Id.* at 951 (¶12). We noted the officer's somewhat ambiguous testimony that he thought he saw residue higher on the bag, which "was possibly crack cocaine." *Id.* at 950 (¶10). But we found that even "[o]bserving the powdery substance itself did not create probable cause." *Id.* at 950-51

12

(¶10).

¶24.    In *Anderson v. State*, 16 So. 3d 756, 758 (¶3) (Miss. Ct. App. 2009), officers observed a handgun inside a home on a table near a known felon.  Jamie Anderson, who was also in the home, was frisked for weapons.  *Id.* at (¶4).  In patting down Anderson, no weapons were found, but the officer felt a pill bottle, which he believed to contain methamphetamine.  *Id.* "The issue that follow[ed] [was] whether [the officer] had probable cause to believe that what he felt in Anderson's pants at the time of the pat-down search actually contained contraband."  *Id.* at 760 (¶11).  While the officer "assumed" the pill bottle contained drugs, "[t]here [wa]s no testimony in the record that pill bottles found in pants' pockets normally contain illegal contraband."  *Id.*  We found that under the plain-view doctrine, "the contraband must itself be in plain view" to establish probable cause and provide an exception to the warrant requirement.  *Id.* at 761 (¶12) (quoting *Ferrell*, 649 So. 2d at 833).  Because the contents of the pill bottle were "not immediately apparent as contraband," "the seizure of the contraband from a pill bottle in Anderson's pocket fit[] neither the 'plain-view' nor the 'plain-feel' exceptions to the warrant requirement" and was illegal.  *Id.* at (¶¶13-14).

¶25.    In a similar case, *Ferrell*, 649 So. 2d at 834, the supreme court found no exception to the warrant requirement for the search of a matchbox.  Ray Ferrell was arrested for speeding and driving with a suspended license.  *Id.* at 832.  Ferrell was frisked and placed in the back of the officer's patrol car.  *Id.*  Upon Ferrell's request, one of the officers went to retrieve Ferrell's keys from his vehicle.  *Id.*  The officer saw a matchbox on the passenger seat next to the keys.  *Id.*  From his experience, the officer knew narcotics were often carried in

13

matchboxes. *Id*. The officer picked up the matchbox, revealing a yellow pill. *Id*. He opened the matchbox, and it contained only matches. *Id*. The officer then saw a second matchbox between the two front seats. *Id*. The officer opened it and discovered nine rocks of crack cocaine. *Id.* at 832-33. The supreme court found the search impermissible under the plain-view doctrine. *Id.* at 833-34. The supreme court stated that "[t]he plain[-]view exception is intended to allow police officers to seize incriminating items that are discovered in the course of their legitimate law enforcement activities, not to justify warrantless, exploratory searches of containers that purport to contain innocuous materials." *Id.* at 834 (internal citations omitted) (quoting *United States v. Villarreal*, 963 F.2d 770, 776 (5th Cir. 1992)). "[A] container cannot be opened unless its contents are in plain view or they can be inferred from the container's outward appearance." *Id.* (quoting *United States v. Sylvester*, 848 F.2d 520, 525 (5th Cir. 1988)).

¶26.    Here, like the foregoing cases, Officer DeGeorge could not articulate anything more than speculation that May might have had something illegal in his possession. When the lighter fell from May's shoe, nothing illegal came into plain view or could be inferred from the lighter's outward appearance. Nor did the testimony show that there was anything inherently dangerous about the lighter that would have justified a search for officer safety. Finally, there was no testimony that Officer DeGeorge's handling of the lighter led him to believe under the plain-touch doctrine that something illegal may be inside. Under the totality of the circumstances and based on our de novo review of the facts established at trial, we find no substantial basis for the establishment of probable cause and no exception to

14

justify Officer DeGeorge's warrantless search of the contents of the lighter.

¶27.    Because Officer DeGeorge lacked probable cause for the search of the lighter and no exception to the warrant requirement applied, his search of the lighter was a Fourth Amendment violation.  It follows that the cocaine seized as a result of the search should have been suppressed.  With no evidence to support May's possession-of-cocaine conviction, the conviction must be reversed and rendered.

### 3.    *Waiver*

¶28.    The State argues "several of the issues raised," including May's assertions of lack of consent and improper custodial interrogation, are procedurally barred because they were not "sufficiently raised" in May's general motion to suppress.  *See Evans v. State*, 725 So. 2d 613, 638 (¶48) (Miss. 1997) (stating that the failure to raise an issue at trial procedurally bars the issue on appeal).

¶29.    In addressing this assertion, we must consider that May filed his motion to suppress pro se and proceeded pro se at trial with standby counsel.  May's standby counsel did not assist at the suppression hearing or during the questioning of Officer DeGeorge at trial.  "While pro se litigants are afforded some leniency, they must be held to substantially the same standards of litigation conduct as members of the bar."  *Sumrell v. State*, 972 So. 2d 572, 574 (¶6) (Miss. 2008).  But a pleading filed by a pro se person "is held to less stringent standards than formal pleadings drafted by lawyers."  *Terrell v. State*, 573 So. 2d 732, 733 (Miss. 1990).  When a person is proceeding pro se, we will not find a "meritorious complaint . . . lost because [it was] inartfully drafted."  *Id.*

15

¶30. Although inartfully drafted, we find May's motion to suppress was sufficient to preserve this issue for review. And, even if it was not, we find review for plain error appropriate. "The plain-error doctrine is implicated when an error at trial affects substantial rights and results in a manifest miscarriage of justice." *Hearn v. State*, 3 So. 3d 722, 736 (¶36) (Miss. 2008). Plain error may be found where the trial court fails "to properly evaluate evidentiary matters." *Id.* "Plain[-]error [review] is also appropriate where there is a violation of constitutional rights." *Id.* May's right to be free from an illegal search and seizure is a constitutional right under the Fourth Amendment, and the admission of the cocaine into evidence was an evidentiary matter, which we find was not properly reviewed by the trial court. Thus, the issues raised, even if waived, are proper for plain-error review. May's conviction is reversed and rendered.

¶31. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT, IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**CARLTON, J., DISSENTING:**

¶32. I respectfully dissent from the majority's opinion. I find that May consented to remove his shoe and, in so doing, voluntarily revealed to Officer DeGeorge the cigarette lighter concealed inside the shoe. As a result, I find that Officer DeGeorge's search of May's cigarette lighter and seizure of the cocaine inside the lighter failed to violate May's Fourth

Amendment rights. For these reasons, I would affirm the circuit court's denial of May's motion to suppress and would affirm May's conviction.

¶33. After arresting the vehicle's driver and discovering that May's driver's license was suspended, Officer DeGeorge concluded that the vehicle would have to be towed. Officer DeGeorge therefore asked May to exit the vehicle and sit on the ground so officers could inventory the vehicle's contents before the vehicle was towed. Officer DeGeorge testified that May was not yet in custody when he asked May to exit the vehicle and sit on the ground. However, Officer DeGeorge further stated that it was not safe for the officers to inventory the vehicle while someone was still inside the car.

¶34. Although May was not yet in custody, Officer DeGeorge noticed that May acted extremely nervous and fidgety. According to Officer DeGeorge's testimony, May kept grabbing and holding onto his right shoe as though he were trying to hide something. Whenever anyone spoke to May or looked in his direction, Officer DeGeorge observed that May would grab and hold onto his right shoe. Due to May's behavior, Officer DeGeorge asked whether May had anything illegal in his possession. After May answered that he did not, Officer DeGeorge asked May whether he would mind taking off his shoes. Officer DeGeorge testified that May consented to the request.

¶35. As May voluntarily took off his shoe, a Zippo cigarette lighter fell to the ground. Officer DeGeorge testified that the center part of Zippo cigarette lighters come out so that a person can refill the lighter. When Officer DeGeorge pulled out the center part of May's cigarette lighter, he found two small plastic bags containing marijuana and crack cocaine.

After discovering the narcotics, Officer DeGeorge arrested May and searched May's person. Upon arriving at the police station, May waived his constitutional rights and gave a statement. During his statement, May admitted that the cocaine and marijuana belonged to him. Testing later revealed that May's cigarette lighter had contained 0.3 grams of cocaine.

¶36. May was subsequently indicted and charged with "knowingly, willfully, unlawfully[,] and feloniously possess[ing] 0.1 grams or more but less than 2.0 grams of cocaine, a Schedule II Controlled Substance[.]" *See* Miss. Code Ann. § 41-29-139(c)(1) (Rev. 2013). The indictment further charged that May was a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015) and had been previously convicted of the following felonies: (1) burglary in cause number B2402-2007-00714, with a sentence of five years in the custody of the Mississippi Department of Corrections (MDOC); (2) unlawful possession of a firearm or a weapon by a convicted felon in cause number B2402-2003-622, with a sentence of three years in MDOC's custody; and (3) attempted robbery, a crime of violence, in cause number 91-7245, with a sentence of fifteen years in MDOC's custody.

¶37. Prior to his trial, May moved to suppress the evidence of the cocaine found in his lighter during the traffic stop. However, the circuit court denied May's pretrial motion and allowed the State to introduce the evidence during the trial. After considering the evidence and testimony presented at trial, the jury found May guilty of possession of a controlled substance. The circuit court sentenced May, as a habitual offender, to life in MDOC's custody without the possibility of parole or probation. May filed an unsuccessful motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. Aggrieved by his

18

conviction and sentence, May now appeals to this Court.

¶38.    On appeal, May asserts no dispute that probable cause existed for Officer DeGeorge's initial traffic stop. Nor does May challenge Officer DeGeorge's right to conduct a pat down of May for the safety of Officer DeGeorge and the other police officers. Instead, May asserts that Officer DeGeorge's search of his cigarette lighter and seizure of the cocaine inside the lighter violated the Fourth Amendment. As a result, May argues the circuit court erred by denying his pretrial motion to suppress the evidence of the cocaine found in his lighter.

¶39.    According to May's argument, Officer DeGeorge's search was unreasonable, lacked probable cause, and occurred without valid consent. Specifically, May argues Officer DeGeorge's search was not reasonably related to the scope of the initial traffic stop and was not justified by probable cause developed during the traffic stop. Furthermore, May contends Officer DeGeorge lacked valid consent to search the lighter. May therefore asks this Court to either reverse and render his conviction or to remand the case for a new trial.

¶40.     With regard to the applicable standard of review, the Mississippi Supreme Court has previously stated:

> When reviewing a trial court's denial of a motion to suppress, [the appellate court] adopts a mixed standard of review. Determinations of reasonable suspicion and probable cause are reviewed de novo. However, [the appellate court] should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers. Thus, [the appellate court] is restricted to a de novo review of the trial judge's findings using the applicable substantial evidence/clearly erroneous standard. Finally, [the appellate court] reviews the admission or exclusion of evidence for abuse of discretion.

*Gillett v. State*, 56 So. 3d 469, 482 (¶21) (Miss. 2010) (internal citations and quotation marks

19

omitted).

¶41.    I also acknowledge that this case addresses the discovery of incriminating evidence found upon May's voluntary removal of his shoe and the revelation to Officer DeGeorge of the lighter concealed within the shoe. As our caselaw establishes, the voluntariness of one's consent to a search is a question of fact to be determined from the surrounding circumstances. *See Gilbreath v. State*, 783 So. 2d 720, 723 (¶6) (Miss. Ct. App. 2000).

¶42.    "The Fourth Amendment to the United States Constitution and Article 3 Section 23 of the Mississippi Constitution provide that an individual has the right to be free from unreasonable searches and seizures." *Shelton v. State*, 45 So. 3d 1203, 1208 (¶10) (Miss. Ct. App. 2010) (citing *Dies v. State*, 926 So. 2d 910, 917-18 (¶21) (Miss. 2006)). "The action of an officer stopping a vehicle is reasonable when there is 'probable cause to believe that a traffic violation has occurred.'" *Lee v. State*, 100 So. 3d 982, 984-85 (¶9) (Miss. Ct. App. 2012) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). However, consent to a search provides an exception to the requirement of a valid warrant or probable cause. *Id.* at 985 (¶10).

¶43.    Although May raises no dispute that probable cause existed for Officer DeGeorge's initial traffic stop, I briefly address the issue. The record reflects that Officer DeGeorge stopped the vehicle for careless driving after he observed the vehicle swerve on the interstate and cross the fog line toward the median. As this Court has previously recognized, the "failure to have regard for the width and use of the street by swerving off the side of the road or crossing the marker lines constitutes probable cause for a traffic stop." *Henderson v.*

*State*, 878 So. 2d 246, 247 (¶8) (Miss. Ct. App. 2004). Thus, under the circumstances presented, probable cause existed for Officer DeGeorge to execute a traffic stop and detain the vehicle.

¶44. "To stop and temporarily detain is not an arrest, and the cases hold that[,] given reasonable circumstances[,] an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest." *Gonzales v. State*, 963 So. 2d 1138, 1141 (¶13) (Miss. 2007) (citation omitted). In addition, the United States Supreme Court has "noted that it is imperative that the facts be judged against an objective standard: Would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Id.* at 1141-42 (¶13) (citations and internal quotation marks omitted). During a proper investigative stop, if a police officer "develops reasonable, articulable suspicion of some criminal activity in addition to . . . that initially suspected, the permissible scope of the stop expands to include the officer's investigation of the newly suspected criminal activity." *Tate v. State*, 946 So. 2d 376, 382 (¶18) (Miss. Ct. App. 2006) (citing *United States v. Kye Soo Lee*, 898 F.2d 1034, 1040 (5th Cir. 1990)).

¶45. In the present case, Officer DeGeorge was able to reasonably articulate the behavior that led him to suspect "some criminal activity in addition to . . . that initially suspected[.]" *Id.* Officer DeGeorge testified that he noticed May acting extremely nervous and fidgety as he sat on the ground. Specifically, Officer DeGeorge observed that May appeared preoccupied with his right shoe and constantly grabbed the shoe whenever anyone spoke to

him or looked at him. Based on his experience and training as a police officer, Officer DeGeorge testified that May's behavior indicated that May was attempting to hide something in his shoe. According to Officer DeGeorge's testimony, May voluntarily consented to remove his shoes. On appeal, the State argues this indicates May also consented to the search of the cigarette lighter that fell out of his shoe.

¶46.    In addition to arguing that he never consented to the search of the lighter, May contends that Officer DeGeorge's search of the lighter was an illegal attempt to find evidence without probable cause. May asserts that, at the time the cigarette lighter fell to the ground, Officer DeGeorge had completed his "safety search" of May. Therefore, because the lighter was a closed container and was neither a weapon nor contraband, May argues that the ensuing search of his lighter was unreasonable and lacked probable cause.

¶47.    In addressing May's assignment of error, I again emphasize that "consenting to a search is an exception to the requirement that searches are to be conducted pursuant to a valid warrant or probable cause." *Lee*, 100 So. 3d at 985 (¶10) (citing *Jackson v. State*, 418 So. 2d 827, 830 (Miss. 1982)). I also recognize that, "[w]hether a person voluntarily consents to a search is a question of fact to be determined by the total circumstances." *Moore v. State*, 933 So. 2d 910, 916 (¶20) (Miss. 2006) (citation and internal quotation marks omitted). In *Gales v. State*, 153 So. 3d 632, 639 (¶17) (Miss. 2014), our supreme court recognized that a defendant lacked a reasonable expectation of privacy with regard to incriminating evidence contained in his pocket when he voluntarily took the item out of his pocket and showed it to law-enforcement officers. With respect to the present case, I find the supreme court's

holding in *Gales* controlling.

¶48.   In *Gales*, a police officer was in pursuit of an armed-robbery suspect when he encountered the defendant. *Id.* at 640-41 (¶19). The officer had reason to suspect that Gales possessed a weapon, and he therefore conducted a search of Gales's person. *Id.* at 641 (¶19). Even though the officer felt no weapon, he did feel an unknown bulge in Gales's back pocket. *Id.* Although concerned for his safety, the officer did not search Gales's pockets. *Id.* Instead, the officer testified that he asked Gales what was in his pocket. *Id.* The officer further testified that Gales voluntarily emptied his pockets, showing the officer the money in his pocket and claiming that he had won the money while gambling. *Id.*

¶49.   Prior to his trial for armed robbery and conspiracy to commit armed robbery, Gales argued the officer's search was unreasonable, and he unsuccessfully tried to suppress all evidence seized as a result of the search. *Id.* at 637 (¶10). In upholding the trial court's finding that the officer performed a constitutional search, the supreme court stated, "Because Gales voluntarily showed [the officer] the money, Gales no longer had a 'reasonable expectation of privacy' as to the money under the Fourth Amendment." *Id.* at 639 (¶17) (quoting *Katz v. United States*, 389 U.S. 347, 359 (1967) (Harlan, J. concurring)).

¶50.   In the present case, May consented to the removal of his shoe, which led him to voluntarily reveal to Officer DeGeorge the cigarette lighter concealed within the shoe. The record reflects substantial evidence to support the circuit court's factual finding that May consented to Officer DeGeorge's search. The record also reflects that May's behavior created probable cause for the search, thereby rendering consent unnecessary. Like the

23

defendant in *Gales*, May lacked any reasonable expectation of privacy as to the incriminating evidence that he voluntarily revealed by removing his shoe. *See id.* As a result, I find no merit to May's claims that Officer DeGeorge's search of his cigarette lighter and seizure of the cocaine inside the lighter violated the Fourth Amendment. I therefore would find no abuse of discretion in the circuit court's denial of May's motion to suppress. *See Gillett*, 56 So. 3d at 482 (¶21). Accordingly, I respectfully dissent from the majority's opinion and would affirm the circuit court's judgment of conviction against May.